[No. 3095-4-III. Division Three. March 6, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. RALPH HAPPY, *Appellant.*

---

*C. Orno Shoemaker* (*Eli Rapaich* and *Rapaich & Knutson,* of counsel), for appellant.

*John M. Lyden, Prosecuting Attorney,* for respondent.

GREEN, C.J.—Defendant appeals his sentence for second–degree murder. He assigns error to (1) the trial court's alleged failure to afford him an opportunity to speak on his own behalf before it imposed sentence; and (2) the court's decision to sentence him to prison instead of ordering probation.

The murder charge arose out of events taking place on July 4, 1977. In his June 1978 statement on plea of guilty, defendant admitted that he had assisted Sue Miller in the murder of Myrtle Boston by driving Miss Miller to the victim's house with knowledge of the act of violence she intended to commit. However, defendant maintained that he had not acted with premeditation. A presentence hearing was held, and on September 8, 1978, the trial court sentenced defendant to a maximum term of not more than 20 years.

First, defendant contends that his case must be remanded for sentencing in compliance with CrR 7.1(a)(1), which provides that:

Before disposition the court . . . shall ask the defendant if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

Here, the following exchange occurred:

THE COURT: Do you have any legal cause why sentence should not be imposed on you at this time?

THE DEFENDANT: Your Honor—

THE COURT: The question is if there is legal cause, you may ask your attorney about that.

(BRIEF CONFERENCE BETWEEN DEFENDANT AND HIS COUNSEL)

A. (By the defendant) No.

THE COURT: Mr. Rapich, do you know any cause why sentence should not be imposed at this time?

MR. RAPICH: No, Your Honor.

Defendant made no objection to the foregoing procedure, but now argues for the first time on appeal that CrR 7.1 does not limit a convicted person's presentence statement to the "legal causes" why sentence should not be imposed. We agree, but for the following reasons find no reversible error.

At common law, the defendant's right to speak before the imposition of sentence was termed the right of allocution and was mandatory in capital cases. Annot., 96 A.L.R.2d 1292, § 4 at 1295 (1964). In this state, the right was extended to all criminal defendants by reason of RCW 10.64.040. That statute read:

> When the defendant appears for judgment, he must be . . . asked whether he have any legal cause to show why judgment should not be pronounced against him.

In *State v. Harris*, 57 Wn.2d 383, 388, 357 P.2d 719 (1960), it was held that a trial court's failure to question a defendant as required by this statute was not reversible error where the defendant did not complain of the omission at the time he appeared for judgment and, further, made no showing that the omission deprived him of a substantial right. *See also State v. Gallagher*, 46 Wn.2d 570, 572, 283 P.2d 140 (1955).

In 1973, RCW 10.64.040 was superseded by the broader CrR 7.1(a)(1). No Washington cases have addressed the rule's application. The language of CrR 7.1(a)(1) is almost

identical to that of Fed. R. Crim. P. 32(a),[1] which was interpreted in *Green v. United States,* 365 U.S. 301, 305, 5 L. Ed. 2d 670, 81 S. Ct. 653, 655 (1961); and *Hill v. United States,* 368 U.S. 424, 7 L. Ed. 2d 417, 82 S. Ct. 468, 471 (1962). In *Green,* the court held that Rule 32(a) guarantees a defendant the right of allocution and directed trial judges to "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Hill* limited a defendant's right to complain of the trial court's noncompliance with the rule to direct appeals. The court held that the error, "which is neither jurisdictional nor constitutional", is not "of the character or magnitude cognizable under a writ of habeas corpus." *See, e.g., State v. James,* 84 N.J. Super. 109, 201 A.2d 80 (1964); and *Erickson v. Denver,* 179 Colo. 412, 500 P.2d 1183 (1972), where the defendants' cause was remanded for resentencing for failure to comply with rules similar to CrR 7.1.

■ The interpretation given CrR 7.1(a)(1)'s counterparts leaves room for a finding of substantial compliance in the appropriate case. Here, the trial judge personally addressed the defendant prior to sentencing. Although his invitation to speak was incorrectly limited to the legal causes why sentence should not be imposed, neither defendant nor counsel called this error to his attention. His counsel was asked whether he knew of *any* cause why sentence should not be imposed and answered "No." Moreover, the defendant and his numerous witnesses had testified extensively at his presentence hearing as to both legal and personal reasons why they believed probation was warranted in his case. The trial court after considering this testimony, nevertheless, imposed a prison sentence. On appeal, defendant has not proffered any additional argument which he might make to the trial court if given the

---

[1]The last sentence of Rule 32(a) stated:

"Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

opportunity. In effect, he has already made a comprehensive argument on his own behalf through his testimony and the testimony of his witnesses at the sentencing hearing. In these circumstances, we are convinced that an order remanding defendant's cause for resentencing would not be useful. Consequently, we hold there was substantial compliance with CrR 7.1(a)(1).

Second, defendant seeks review of his sentence. Based on the following facts, he argues that incarceration is too harsh a punishment in his case.

Defendant suffers from narcolepsy, a condition characterized by brief attacks of deep sleep. At the time of the murder, he was taking Dexedrine to alleviate the symptoms of the disease, but the prescribed drug was not helping him a great deal. As a result, he began abusing the drug. He would use all of his prescription early by taking it in a dosage greater than that prescribed, then either do without it or obtain the drug illegally until it was possible to renew the prescription. His involvement with street drugs led to his acquaintance with Miss Miller and others allegedly responsible for the murder. The plan for the murder was developed over a period of weeks. Although disputed, money allegedly passed in payment for the murder.

The medical testimony at his sentencing hearing indicated that defendant's narcolepsy had affected him psychologically, making him a gullible and easily led person. These same witnesses stated that the massive doses of Dexedrine taken by the defendant the day of the murder had distorted his view of reality so that he was incapable of formulating a true conception of the events that occurred. When questioned about their opinion of defendant's mental health as of the date of the hearing, they commented generally that defendant was "improving." His drug prescription had been changed and he was better able to cope with his disease, making it improbable that he would again engage in criminal activity. Probation with intensive supervision was recommended by defendant's witnesses.

Experts and friends expressed concern that a prison sentence would prove devastating to the defendant. Their reasoning is based upon two factors. Because of his affliction, defendant would have legal access to drugs in prison, where drug abuse flourishes out of control of the authorities. This factor, when coupled with defendant's tendency to be a follower, would result in his becoming a pawn for the stronger–willed inmates in their search for drugs. His tendency to follow would also make it likely that he would be a hardened criminal at the end of his prison term.

In its oral opinion, the trial court recognized that the defendant's narcolepsy did have a substantial effect on his participation in the crime. However, in the court's view, the nature of the crime as well as the protection of society required the defendant's incarceration to insure against his falling back into a similar situation.

█ It is well established that probation is not a right, but a privilege, the granting or denying of which rests in the sound discretion of the trial court. *State v. Dainard,* 85 Wn.2d 624, 626, 537 P.2d 760 (1975); *State v. Withers,* 8 Wn. App. 123, 129, 504 P.2d 1151 (1972). Discretionary abuse may exist only where it can be said that no reasonable person would take the view adopted by the trial court. *State v. Birdwell,* 6 Wn. App. 284, 299, 492 P.2d 249 (1972). We find no abuse of discretion in the court's refusal to grant probation here. The sentence is appropriate in light of the seriousness of the offense and the possibility that defendant might slip back into the habits and associations which gave rise to his involvement in the crime. None of the defendant's experts could negate this possibility, and it was reasonable for the trial court to consider it in imposing sentence.

Defendant suggests that we apply the American Bar Association Standards relating to appellate review of sentences. We have studied these standards and find nothing therein which would mandate a vacation of the sentence imposed here.

530

Affirmed.

MUNSON, J., concurs.

ROE, J. (dissenting)—I dissent. The majority recognizes that there was a violation of the rule and cases cited in its opinion, but holds it would be a useless act to return the defendant for the exercise of his right of allocution given to him by the law.

The court merely inquired if there was *legal* cause. The inquiry was incorrect and it produced the error. Allocution presumably serves a purpose. We do not know what the defendant might say in an expression of repentance, remorse, or determination for self–rehabilitation, or any other matter relevant to sentencing. These are usually outside the legal facts of the case. We should not prejudge that the effect of allocution in this case would be nil.

Even if there would be no change in the ultimate result in this case, yet this dissent would preserve us from setting a precedent contrary to CrR 7.1(a)(1).

Reconsideration denied April 3, 1980.

Review granted by Supreme Court June 6, 1980.