[No. 3630–8–III.  Division Three.  June 23, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
B. PETERSON, *Appellant.*

*Lewis Arnold,* for appellant.

*Norman G. Sauer, Prosecuting Attorney,* for respondent.

GREEN, J.—Daniel B. Peterson appeals[1] from a Ferry County conviction of third degree assault on an arresting officer.

Mr. Peterson contends the trial court erred in either (1) not allowing the prosecutor to specifically perform his plea bargain agreement; or (2) not granting the defendant's motion to withdraw his plea after sentence was pronounced.

On October 30, 1978, Mr. Peterson was charged with third degree assault, and on November 13, he pleaded not guilty. He was released on his own recognizance. Based upon a plea bargain agreement, he advised the court on February 1, 1979, that he desired to change his plea to guilty. At the outset of that hearing, the prosecutor stated:

> Your Honor, this comes on for plea bargaining with the Defendant and counsel. The bargain is that on a plea of guilty to the charge of third degree assault the prosecution recommends no jail time, probation and leaving the fine and/or conditions of probation open to the Court.

Mr. Peterson and his counsel acknowledged the substance of the agreement, and Mr. Peterson advised the court he had read the statement of defendant on plea of guilty,[2] had gone over it with his attorney, understood it and had no questions about its provisions. During the following colloquy, the court ensured that Mr. Peterson understood it was not bound by the plea bargain agreement and the matter of sentencing was solely within its discretion:

> THE COURT: All right. Fine. Now, it's my understanding in the plea bargaining that the Prosecuting Attorney is going to recommend three years probation, no jail time and no recommendation with respect to any fine. Is that

---

[1]Despite the entry of a guilty plea, a defendant may nonetheless appeal from a resulting conviction to challenge the circumstances under which the plea was made. *In re Keene,* 95 Wn.2d 203, 205, 622 P.2d 360 (1980); *State v. Saylors,* 70 Wn.2d 7, 422 P.2d 477 (1966).

[2]CrR 4.2(g) mandates the filing of such a statement upon a plea of guilty. The defendant's acknowledgment to the court that he read and understood its contents satisfies the requirement that the court inquire of the defendant concerning the voluntariness of the plea. *See In re Keene, supra* at 206 n.1.

your understanding?

    MR. PETERSON: Yes, sir.

    THE COURT: Mr. Arnold?

    MR. ARNOLD: Yes, Your Honor.

    THE COURT: Mr. Sauer?

    MR. SAUER: Yes.

    THE COURT: You understand the Court is not required to accept the agreement between yourself, your attorney and the Prosecuting Attorney, that I make my own independent decision?

    MR. PETERSON: Yes.

With respect to the voluntariness of the plea, the court further inquired:

    THE COURT: Now, were there any other promises, threats, force, pressure or influence brought to bear on you to enter this plea of guilty?

    MR. PETERSON: No, sir.

    THE COURT: You're doing this freely and voluntarily?

    MR. PETERSON: Yes, sir.

    THE COURT: And, knowing what I've told you here do you still want the Court to accept your plea of guilty?

    MR. PETERSON: Yes, sir.

    THE COURT: Very well. Upon your plea of guilty the Court finds you guilty and this matter will be referred to the Department of Social and Health Services Adult Parole and Probation Department for a presentence investigation.

Assured of the voluntariness of the plea, the court accepted it and ordered a presentence investigation. The presentence report recommended probation on condition defendant serve 6 months in the county jail to

    impress upon Mr. Peterson that No. 1—he has to abide by lawful orders of the law enforcement authorities and maybe it will impress on his friends that there are legal ways of dealing with law violations, other than taking the law into their own hands and defying legal authority.

On July 1, 1979, defendant appeared before the court for imposition of sentence. At the outset, the court stated:

    All right. You're pretty well committed on your recommendation, Mr. Sauer [Prosecutor]. Mr. Arnold [defense counsel].

In response, defense counsel stated:

> I have not been, your Honor, in contact with Mr. Sauer [Prosecutor]. I think his recommendation—I would like him to address that recommendation and support it in view of the presentence investigation which we question the basis for.

He also asked that the assaulted officer testify. The court stated it would like to have the officer's recommendation. After pointing out that it was not bound by the plea bargain agreement, the court stated:

> You're not bound by any recommendation of the officer who conducted the presentence investigation. I do take a dim view of assault on a police officer. I think they have enough garbage to put up with without having to take physical abuse. I think it would be very germane if we have Trooper McMillan here. I'll continue this until August 13.

The prosecutor did not make, nor was he required to make, any statement at the July hearing.

When the hearing commenced on August 13, the court asked the officer for his recommendation. The officer recommended 60 days in jail. Defense counsel questioned the officer and elicited the fact two other individuals involved in the incident were charged with simple assault, a misdemeanor. Here, the defendant was charged with a felony. Defense counsel then requested that the prosecutor be permitted to address the court in support of his recommendation:

> Your Honor, I would like to hear from Mr. Sauer [prosecutor] in terms of the recommendation and specifically to have him speak in favor of his plea bargain arrangement. I think I find myself a little in quite a dilemma actually as to what has transpired in this particular case.

The court, in making its ruling, again emphasized its feelings that to stop assaults on police officers it is necessary to impose jail time, and then stated:

> I'm willing to hear anything you have to state on this, but Mr. Sauer [prosecutor] has made his committment

[*sic*]. He has not reneged on the plea bargaining. He made the same recommendation as the last hearing and which was contrary, I think, to what the presentence investigation recommendation was, which has brought about, really, this second hearing. I'm not particulary [*sic*] concerned what Mr. Sauer's feelings are. He's committed himself and he's bond [*sic*] by it.

Defense counsel pointed out that the prosecutor made no oral statement with respect to his sentencing recommendation. In response, the court stated that the agreement signed by the prosecutor provided he would recommend probation and no jail time and "this Court takes that as his recommendation and at all times—and I'm not going to have you invite . . . [the prosecutor] to change his mind because I'm going to hold him to this contract and as far as this Court is concerned . . . [the prosecutor's] recommendation at this time is probation with no jail time." At that point defense counsel argued in favor of probation with a fine of $250 which was claimed to be commensurate with what the other involved individuals received. The court imposed sentence, placing defendant on probation for 3 years with a fine and requiring him to serve 60 days in the county jail, stating:

> The Prosecuting Attorney has recommended probation with no jail time. The officer that conducted the presentence investigation has jail time, and the victim recommends jail time, and as I told you I think these officers have enough garbage to take without some punk getting involved in using physical abuse on him, and I have not got a great deal of sympathy for him. . . . He got himself involved in this. I didn't. The officer didn't.

Again, the prosecutor said nothing at the hearing. This appeal followed.

Mr. Peterson contends the prosecutor breached the plea bargain agreement. We disagree. The terms of the plea bargain were established prior to the acceptance of the plea. The court knew the prosecutor's recommendation was probation. It was the court that prevented any further statement by the prosecutor. However, although we find no

prosecutorial breach of the plea bargain, we are constrained on these facts to find the trial court erred in preventing the prosecutor from explaining the reasons underlying the plea bargain.

■ First, the failure to grant a defendant's request for an explanation of the reasons underlying a bargained–for sentencing recommendation will tarnish the integrity and fairness of the widely accepted plea bargain system. *See Corbitt v. New Jersey*, 439 U.S. 212, 222, 58 L. Ed. 2d 466, 99 S. Ct. 492, 499 (1979). The *only* consideration given by the prosecutor in exchange for Mr. Peterson's plea was the sentencing recommendation—a recommendation everyone understood was not binding on the court.[3] Here, defendant pleaded guilty as charged. Although the record clearly establishes the plea bargain was struck knowingly and voluntarily and Mr. Peterson was aware of the trial court's sentencing discretion, he obviously expected more from this bargain than a simple statement that the prosecutor's recommendation was that he not serve time in jail. We do not believe his request placed an excessive burden on the prosecutor or the court. Where a defendant pleads guilty solely in exchange for a sentencing recommendation, fundamental fairness requires that, on his request, the prosecutor be allowed to make a statement concerning his recommendation.

Second, we perceive in *State v. Happy*, 25 Wn. App. 524, 607 P.2d 1255, *rev'd*, 94 Wn.2d 791, 620 P.2d 97 (1980), a concern that, where liberty is involved, the sentencing court not close its ear to what the parties might say prior to pronouncing sentence, even though the statement might not change the contemplated sentence.[4] While *Happy* may be

---

[3]This is a far cry from a bargain involving reduced or partially dismissed charges or the failure to pursue an enhanced penalty. Indeed, one writer questions whether such bargains are illusory. *See* Note, *Withdrawal of Guilty Pleas,* 14 Gonz. L. Rev. 465, 474–75 (1979).

[4]In *Happy,* the court reversed the trial court's failure to accord a defendant his right of allocution provided by CrR 7.1(a)(1) even though the issue was never

distinguishable because it involved a court rule, its essence is reinforced by other recent decisions. *See State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980); *Brooks v. Rhay,* 92 Wn.2d 876, 602 P.2d 356 (1979). If the sentencing court understands the reasons behind the prosecutor's recommendation, the information may be helpful in fashioning the most appropriate punishment. Although the trial judge expressed a view that it is unlikely anything the prosecutor may have said would have changed the sentence in this case, foreclosing the possibility by preventing the prosecutor from explaining his position, in the face of a specific request by defendant to do so, closes off a source of information and hampers the exercise of the court's discretion.

Consequently, we are constrained to remand this case for resentencing before a different trial judge. At that time, the prosecutor shall be permitted, if again asked by defendant, to make a statement regarding his recommendation in the plea bargain. This statement along with the presentence report, the officer victim's statements, and any other matters that may be presented shall be considered.

Remanded for reconsideration of sentence.

McINTURFF, C.J., concurs.

MUNSON, J. (dissenting)—I disagree because I attribute no fault to the prosecuting attorney when he is prohibited by the trial court from justifying his recommendation. It is clear from the quotations in the majority opinion that the prosecutor was not given an opportunity to justify his recommendation. However, the determination of a defendant's sentence is solely within the discretion of the trial court; no error is assigned to the court's failure to obtain as much information about Mr. Peterson as possible. To require, at this point, an opportunity for the trial court to obtain the

raised in the trial court and the trial court had listened to defendant and his witnesses present extensive evidence as to why probation should be granted despite the fact defendant pleaded guilty to murder in the second degree. The case was remanded for resentence.

benefit of the prosecutor's reasoning appears to be of little avail. I doubt the prosecutor will be able to persuade the trial court to reach a different result.

In *Santobello v. New York,* 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), the United States Supreme Court gave its approval to plea bargaining. It reversed that case because an assistant United States attorney, other than the one who had entered into the plea bargain agreement, represented the government at the time of sentencing. That attorney was unaware of the agreement and did not concur in the recommendation; nevertheless, the court held the prosecution was bound by the plea bargain. Likewise, *United States v. Grandinetti,* 564 F.2d 723 (5th Cir. 1977) and *United States v. Brown,* 500 F.2d 375 (4th Cir. 1974), found that the prosecutor backed away from the agreement.

I have no difficulty with the prosecutor who does not stand by his recommendation. *In re Palodichuk,* 22 Wn. App. 107, 110, 589 P.2d 269 (1978). While I would agree the trial court should have listened to the prosecuting attorney if he had any comments in addition to his recommendation, I know of nothing that compels the court to do so.

Mr. Peterson attacks the prosecutor's alleged failure to advocate, not the court's failure to listen or to require the prosecutor to speak. I would agree that upon inquiry from the court, the prosecutor must justify his position or his recommendation by such reasons as: a crowded trial docket, a weak link in the chain of evidence, the availability or recalcitrance of witnesses, or the elimination of some possible, questionable application or interpretation of law based upon recent appellate decisions. But once the agreement has been struck, the recommendation made and acknowledged as a product of negotiation, I would not impose upon the prosecutor the obligation to "strongly advocate" for that position. Presumably the defendant has able counsel to do that on his behalf; it is unnecessary for the State to supply additional advocacy by its own representative.

*State v. Happy,* 94 Wn.2d 791, 793, 620 P.2d 97 (1980), was based on a procedural rule adopted to afford the

defendant "*a personal invitation to speak prior to sentencing*", quoting from *Green v. United States,* 365 U.S. 301, 305, 5 L. Ed. 2d 670, 81 S. Ct. 643 (1971). *Brooks v. Rhay,* 92 Wn.2d 876, 878, 602 P.2d 356 (1979), speaks to the necessity of resentencing if an erroneous sentence has been imposed. *State v. Bird,* 95 Wn.2d 83, 622 P.2d 1262 (1980), speaks to suspending the execution of a disposition order in a juvenile case. None of the cases cited in the majority compel the trial court to seek the reason or reasons behind the prosecuting attorney's plea bargain, or require the prosecuting attorney do more than keep his bargain.

Lastly, while Mr. Peterson would hold the prosecutor responsible, the majority on page 660 holds the court erred "in preventing the prosecutor from explaining the reasons underlying the plea bargain." The majority finds no error by the prosecutor; thus, the reversal is on a point not raised by Mr. Peterson on appeal. The point is not of constitutional magnitude. While the trial court may be affirmed by this court on any theory, it should not be reversed on a theory not raised.

Reconsideration denied October 2, 1981.

Review granted by Supreme Court December 3, 1981.