[No. 10794-1-I.   Division One.   January 17, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. GUENTER MANNHALT, *Appellant.*

*Guenter Mannhalt,* pro se, *Deborah J. Youngblood, James S. Kempton,* and *Kempton, Savage & Gossard,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Deputy,* for respondent.

CORBETT, J.—Defendant, Guenter Mannhalt, appeals his judgment and sentence for one count of conspiracy to commit robbery in the first degree, six counts of robbery in the first degree, one count of attempted robbery in the first degree, one count of possessing stolen property in the first degree, and two counts of possessing stolen property in the second degree. A separate judgment and sentence for an additional charge of possessing stolen property in the second degree, which was consolidated at trial and for the purpose of review, has also been appealed. We affirm.

On October 17, 1980, a search, pursuant to a warrant, was conducted at defendant's place of business in Seattle. Hundreds of items were seized, some of which were later identified as stolen. Following execution of the search warrant, five men admitted their involvement in 10 restaurant robberies in the Seattle area. They implicated the defendant as an accomplice in the robberies when they testified for the State at defendant's trial.

An extensive pretrial hearing was conducted on defendant's motion to suppress the evidence seized pursuant to the search warrant. The warrant had been issued in Bellingham by a superior court judge for Whatcom County. Before issuing the warrant, the judge heard testimony, under oath, from an informant and a Whatcom County deputy sheriff. The application for the warrant occurred in the early morning hours and apparently was presented to the judge at his home. The testimony was electronically recorded and later transcribed. The transcribed proceeding required 22 typewritten pages. No written affidavit supporting the warrant application was submitted.

Defendant assigns error to denial of his motion to suppress on several grounds. First, he contends that suppression is called for because the warrant was not issued on affidavit, as required by CrR 2.3(c), which states: "A warrant shall issue only on an affidavit or affidavits establish-

ing the grounds for issuing the warrant."

■ A signed affidavit is not a constitutional requirement for issuance of a warrant. *State v. Malbeck,* 69 Wn.2d 695, 697, 419 P.2d 805 (1966); *State v. Walcott,* 72 Wn.2d 959, 967, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890, 21 L. Ed. 2d 169, 89 S. Ct. 211 (1968). The use of a signed affidavit is an alternative procedural requirement, as evidenced by the next sentence of the cited rule: "Such affidavit or affidavits may consist of an officer's sworn telephonic statement to the judge; . . ." Use of sworn testimony, contemporaneously recorded, is substantial compliance with the intent and purpose of the rule. Unless the defendant can demonstrate a disadvantage resulting from the failure to strictly comply with the rule, the validity of the warrant must be upheld. *State v. Parker,* 28 Wn. App. 425, 427, 626 P.2d 508 (1981); *United States v. Vasser,* 648 F.2d 507, 511 (9th Cir. 1980), *cert. denied,* 450 U.S. 928, 67 L. Ed. 2d 360, 101 S. Ct. 1385 (1981).

■ Defendant also contends that the warrant was defective for lack of probable cause. The test for determining the constitutional reasonableness for issuance of a search warrant was set out in *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973), as follows:

> Do the documents or testimony supporting the warrant give a fair–minded, independent judicial officer, on considering all of the facts and circumstances set before him on oath or affirmation, good reason to issue the warrant?

*Patterson,* at 52.

> Thus, when all of the circumstances as related under oath to the issuing magistrate are considered, the question of probable cause is reduced to whether there is a "substantial basis" for the warrant.

*Patterson,* at 55. Under the 2–pronged test of *Aguilar*[1]– *Spinelli,*[2] probable cause is established when, from the

---

[1]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

[2]*Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

facts presented, a magistrate can make an affirmative independent determination that both (1) the information, and (2) the sources of the information are reliable. *State v. Smith*, 28 Wn. App. 387, 389–90, 624 P.2d 191 (1981). The officer testified under oath, and his statements of personal knowledge are presumptively reliable. *State v. Matlock*, 27 Wn. App. 152, 155, 616 P.2d 684 (1980); *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied*, 449 U.S. 873, 66 L. Ed. 2d 93, 101 S. Ct. 213 (1980). The informant also appeared before the court to testify under oath, and made statements against his penal interest. These are substantial positive factors in evaluating his credibility. *State v. Sainz*, 23 Wn. App. 532, 535–36, 596 P.2d 1090 (1979); *State v. Lair*, 95 Wn.2d 706, 711, 630 P.2d 427 (1981). The deputy sheriff verified a portion of what the informant told the court, and the judge who issued the warrant specifically found the informant to be believable. The credibility prong of the *Aguilar–Spinelli* test was, therefore, met.

The information presented also demonstrated a sound basis of personal knowledge. The deputy sheriff had made observations which were confirmed by the informant. The informant, who had worked for the defendant for several years, testified to personal observations and involvement in criminal activity which implicated the defendant and the premises to be searched. The informant's testimony indicated that the items sought were presently located at defendant's place of business and specified where they would be found on these premises. Thus, the "basis of knowledge" prong of *Aguilar–Spinelli* was also satisfied. *State v. Maffeo*, 31 Wn. App. 198, 200–01, 642 P.2d 404 (1982). There was probable cause for issuance of the search warrant.

Defendant next contends that the trial court erred by denying his motion for an evidentiary hearing concerning the veracity of the search warrant application. The motion was based upon specific instances of allegedly false, misleading, negligent, inaccurate or incomplete statements made by the deputy sheriff and informant. The alleged

misrepresentations were discovered through subsequent testimony of the witnesses in two Whatcom County Superior Court trials. The learned, assiduous judge who ruled on the suppression motion found that:

VI. Chief Deputy Gill negligently misrepresented facts regarding conversations between undercover police officers and the defendant. Gill's misrepresentation imputed to the defendant knowledge of Taa's and Kline's illegal drug transactions with undercover police officers.

VII. Excision of Gill's misrepresentation from the application for search warrant does not affect the determination of probable cause.

VIII. Eric Taa's [the informant] statement to Judge Forrest was based upon his personal observations at the defendant's business premises while employed by him. Taa's observations included the defendant's possessing stolen property (including guns) and illegal drugs (specifically "speed") at his business premises over a period of more than a year, as well as within a few hours prior to Taa's giving the sworn statement.

IX. Taa intentionally misrepresented facts regarding events occurring at defendant's business premises during the early evening of 16 October 1980. Taa's misrepresentation imputed acquisition from the defendant at his business premises of the guns and drugs which subsequently were seized from Kline and Taa during their arrest in Whatcom County the same evening.

X. Excision of Taa's misrepresentations would affect the determination of probable cause. If excised, insufficient facts would exist to support probable cause to believe stolen guns and/or drugs would be located at defendant's business premises.

XI. Eric Taa is not and was not a police officer. The police officer affiant, Chief Deputy Gill, did not know that Taa was misrepresenting facts to Judge Forrest nor did he have reason to suspect such misrepresentation.

XII. Judge Forrest's conclusion that Taa's information was reliable is supported (1) by the fact that Taa gave his statement under oath and after being advised of his rights pursuant to *Miranda v. Arizona;* (2) by the fact that Taa's statement was self–incriminating and therefore against his penal interest; (3) by the fact that the gun seized from Kline had been verified by police as sto-

len, corroborating Taa's description of it as stolen; and (4) by the judge's personal observation of Taa's demeanor and manner while giving the sworn statement.

XIII. Sufficient information was presented in support of the application for search warrant to warrant a neutral and detached magistrate in reasonably concluding there still would be found on the premises of the International House of Donuts illicit drugs and stolen guns.

The test is set out in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978):

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks,* at 155–56. However, only deliberate falsity or reckless disregard for the truth by the officer may be impeached, not that of any nongovernmental informant. *Franks,* at 171; *State v. Larson,* 26 Wn. App. 564, 569, 613 P.2d 542 (1980).

■ The exclusionary rule does not apply to the actions of private persons. *State v. Sweet,* 23 Wn. App. 97, 99, 596 P.2d 1080 (1979). Good faith reliance by governmental officials on knowing and materially false statements of a nongovernmental affiant does not call for use of the exclusionary rule. *United States v. Damitz,* 495 F.2d 50, 55 (9th Cir. 1974). The rule is intended to deter lawless police action. *Damitz,* at 55–56; *State v. Legas,* 20 Wn. App. 535, 539, 581 P.2d 172 (1978). Before the wrongful actions of a private citizen will be imputed to the State, it must be shown that the latter in some way instigated, encouraged, counseled, directed, or controlled the conduct in question. *State v. Agee,* 15 Wn. App. 709, 713–14, 552 P.2d 1084 (1976), *aff'd on other grounds,* 89 Wn.2d 416, 573 P.2d 355 (1977). Defendant makes no such showing here. Because bad faith on the part of the State and/or deputy sheriff has not been shown, the defendant is not entitled to go behind

the face of the search warrant to challenge the veracity of the supporting testimony. The trial court did not err by denying defendant's motion for an evidentiary hearing.

Finally, defendant assigns error to the denial of his motion to immunize witnesses from prosecution. In its case in chief, the State called five witnesses who admitted their involvement in several restaurant robberies. They identified the defendant and others as accomplices. The defendant sought to call as witnesses the others who were identified as accomplices. It was argued in support of the motion that these prospective witnesses would have admitted their guilt and exonerated the defendant, but that they would not testify because they feared that any testimony relating to the robberies would result in their prosecution.

The granting of immunity is governed by CrR 6.14.[3] Under this rule, "[a] defendant does not have a right to a grant of immunity to a witness, or to compel such a grant." *State v. Matson,* 22 Wn. App. 114, 120–21, 587 P.2d 540 (1978). Cases in other jurisdictions, however, have recognized that under some circumstances the refusal to grant a defendant's request to immunize witnesses may result in denying the defendant due process and a fair trial. These cases require a showing of either extreme prosecutorial misconduct or vital necessity in obtaining exculpatory, noncumulative testimony. *Compare United States v. Morrison,* 535 F.2d 223 (3d Cir. 1976) *with United States v. Alessio,* 528 F.2d 1079 (9th Cir.), *cert. denied,* 426 U.S. 948, 49 L. Ed. 2d 1184, 96 S. Ct. 3167 (1976). If the requisite showing is made, the witnesses are entitled only to "use" immunity for their testimony. *United States v. Morrison, supra* at 229; *cf.* CrR 6.14. Of the five prospective defense

---

[3]CrR 6.14 provides, in pertinent part:

"In any case the court on motion of the prosecuting attorney, may order that a witness shall not be excused from giving testimony . . . on the ground that his testimony may tend to incriminate or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which he has been ordered to testify pursuant to this rule."

witnesses mentioned during presentation of the motion, three testified on defendant's behalf even though they were not granted immunity. None of the three raised any Fifth Amendment claims. The other two were not called by the defense. No offer of proof concerning their testimony was made in support of the motion. We are left to speculate as to how the defendant might have been prejudiced by failure to grant them immunity; it does not appear to have deprived him of a fair trial. The court did not err in denying the motion.

■ In his pro se supplemental brief, the defendant alleges that the trial court erred in denying his motion for a change of venue, in denying his motion to dismiss two counts of the information for insufficient evidence, and in not advising the jurors that they could take notes. The portion of the record certified to this court does not contain any of the motions or proceedings relevant to these matters. Therefore, we cannot consider the alleged errors. *State v. Bradfield*, 29 Wn. App. 679, 685, 630 P.2d 494 (1981).

Affirmed.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied March 31, 1983.