[No. 26283-1-I.   Division One.   December 28, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. GUENTER
MANNHALT, *Appellant.*

758

*Richard A. Hansen* and *Allen & Hansen P.S.*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Deputy,* for respondent.

SCHOLFIELD, J. — Following a retrial after the Ninth Circuit Court of Appeals issued a writ of habeas corpus, Guenter Mannhalt appeals his conviction of conspiracy, robbery, and possession of stolen property, arguing that the trial court erred in refusing discovery about prosecution witnesses, not issuing a cautionary accomplice jury instruction, and denying his motion to relitigate the motion to suppress. We affirm.

## FACTS

Guenter Mannhalt was arrested on October 17, 1980, after police seized stolen property at his place of business, the International House of Donuts on Pike Street in Seattle.

Mannhalt was charged with conspiracy to commit robbery, robbery, attempted robbery, and possession of stolen property.

The charges stemmed from a string of restaurant robberies committed in the summer and fall of 1980. The perpetrators were former associates of Mannhalt's, five of whom testified for the State: Sam Kline, Eric Taa, Delbert Sheeler, Jeff Counts and Tom Morris. Mannhalt allegedly loaned or rented guns and cars to them for the robberies, advised and assisted them in committing the robberies, and received stolen money and property, some of which was later found in a search of his office. Mannhalt himself was never present at the scene of the robberies, and at trial denied any involvement in them.

As part of a plea bargain, Morris agreed to testify against Mannhalt. In November of 1980, months before the initial trial, Morris claimed to the police that Mannhalt's trial attorney, James Kempton, purchased stolen property from him. During the trial, Kempton cross-examined Morris regarding these allegations, becoming "furious" and "shaken" when Morris repeated them. Kempton offered his own unsworn testimony that Morris' accusation was false, and asked his wife, a spectator at the trial, about her jewelry. Later, Kempton admitted he had lost his composure during the cross examination.

Mannhalt was convicted of the conspiracy charge, six counts of robbery, one count of attempted robbery, one count of possession of stolen property in the first degree and three counts of possession of stolen property in the second degree. Mannhalt appealed the trial court's denial of his motion to suppress evidence, and other issues. His convictions were affirmed in *State v. Mannhalt*, 33 Wn. App. 696, 658 P.2d 15, *review denied*, 100 Wn.2d 1024 (1983).

In his 1983 petition for review to the Washington Supreme Court, Mannhalt's new attorney raised three new issues, none of which involved search and seizure issues or that Kempton was ineffective. In a 1984 personal restraint petition to the Court of Appeals and a 1984 motion for discretionary review to the Washington Supreme Court, Mannhalt

again did not pursue the search issue. All his state court appeals were rejected.

In 1986, Mannhalt unsuccessfully sought habeas corpus relief in federal district court. On appeal, the Ninth Circuit Court of Appeals found no conflict of interest as to Kempton's prior representation of one of the State's witnesses, Tom Morris, but found that Kempton had a conflict of interest because of his being accused by Morris of crimes related to those allegedly committed by Mannhalt. The Ninth Circuit held that

> Morris' accusation against Kempton adversely affected Mannhalt's representation in four areas: 1) Kempton's failure to testify to rebut Morris' allegations, 2) Kempton's cross-examination of Morris, 3) Kempton's failure to question Mannhalt on direct about the allegations, and 4) Kempton's failure to explore possible plea bargains.

*Mannhalt v. Reed*, 847 F.2d 576, 581 (9th Cir.), *cert. denied*, 488 U.S. 908 (1988). The Ninth Circuit granted Mannhalt's habeas writ, and gave the State 90 days to refile charges in King County Superior Court.

Prior to the retrial, the State objected to a defense motion to compel discovery of background information and the current addresses of the State's cooperating witnesses. The court granted a prosecution motion in limine to prohibit any questions which might reveal the current location of those witnesses. The court also ruled that Mannhalt could not relitigate his motion to suppress physical evidence because it had been adequately litigated at a pretrial hearing before the first trial, and was res judicata as to the second trial. At the conclusion of the trial, the court refused to give a requested cautionary instruction regarding the testimony of accomplices.

Mannhalt was convicted again of conspiracy, of five of the seven robbery charges, and of three charges of possessing stolen property. His sentence was suspended, and he was placed on probation. This appeal followed.

## MOTION TO SUPPRESS

Mannhalt contends that following federal habeas relief, a de novo relitigation of the entire case is required, including

pretrial suppression matters. The State argues that the defendant failed to challenge the suppression issue in any previous appeal, res judicata applies, and the conflict upon which the Court of Appeals based its habeas relief had no effect on the prior litigation of the search issue.

At the first trial, the suppression of evidence was a hotly contested issue. Kempton and his associate, Deborah Youngblood, first challenged the legality of the search of Mannhalt's donut shop in a motion filed with the trial court on April 1, 1981. Defense counsel filed a Motion for Suppression of Physical Evidence, and a 21-page memorandum in support of that motion, arguing that probable cause had not been established and that the issuance and execution of the search warrant violated CrR 2.3(c) and (d).

Later in April 1981, Kempton asked that the fruits of the search be suppressed because of Taa's alleged misstatements in support of the search warrant. Although Judge Mattson found that Taa had misstated material facts in his support of the application for a search warrant, he found that Taa was not a police officer, and that neither the affiant (a police officer) nor the judge who issued the search warrant had reason to suspect Taa's misrepresentations. Judge Mattson held the exclusionary rule inapplicable to Taa.

On January 17, 1983, the Washington State Court of Appeals rendered its decision in Mannhalt's direct appeal. *State v. Mannhalt, supra.* Much of the court's opinion dealt with Mannhalt's arguments regarding the search. In affirming Mannhalt's convictions, the Court of Appeals noted that the pretrial hearing on the suppression issue had been "extensive". *Mannhalt,* 33 Wn. App. at 698. The Court of Appeals held the exclusionary rule inapplicable to the actions of private persons, and held that the State's agents had relied in good faith upon Taa's statements. Mannhalt's convictions were affirmed. After a motion for reconsideration was denied, Mannhalt then obtained new counsel (his present attorney), who attempted other relief in state court before resorting to federal court. No claim was ever made that Kempton did not competently handle the search and seizure issue.

In granting Mannhalt's habeas corpus petition, the Ninth Circuit found that only one aspect of the case — Morris' claims of criminal wrongdoing against Kempton — had created an actual conflict. The court did not find a conflict in other areas, and in fact rejected Mannhalt's claim that Kempton's supposed prior representation of Morris created such a conflict. *Mannhalt v. Reed*, 847 F.2d at 580-81.

Until the beginning of his second trial, Mannhalt did not raise any issue concerning the impact of Morris' allegations, and Kempton's conflict of interest, on Kempton's litigation of the search issue. The trial court found there had been no attorney incompetence or conflict regarding litigation of the search issue:

> I see nothing to find any incompetence that may relate to the search and seizure elements. I think everything reasonably to be developed by Mr. Kempton in that process was developed, so I'm denying that application. I simply see no point in relitigation of the thing. If I felt it was incompetently done or something like that, I would grant it, but I think we would be simply going through an exercise without any particular point to it.

■ Under the doctrine of law of the case, determination of the applicable law in a prior appeal generally precludes redeciding the same issue in a subsequent appeal:

> [Q]uestions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause. The Supreme Court is bound by its decision on the first appeal until such time as it might be authoritatively overruled.

*Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)). The law of the case doctrine is discretionary, as codified at RAP 2.5(c)(2):

> *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

The doctrine is similarly discretionary as to prior trial court actions. RAP 2.5(c)(1). Thus, if the holding of a prior appeal is "clearly erroneous and the application of the doctrine would result in manifest injustice", reconsideration of an identical legal issue in a subsequent appeal will be granted. *Folsom*, at 264.

Here, Mannhalt does not allege that the court's holding in *State v. Mannhalt*, 33 Wn. App. 696, concerning suppression of evidence, was clearly erroneous as a matter of law. Rather, he reargues the unlikeliness of the truthfulness of Taa's statement upon which the search warrant was granted. The evidence Mannhalt offers — that Taa shared a cell with Kline for a couple weeks following their arrest during which they discussed plea agreements, and that police detectives told Taa they were specifically interested in evidence concerning Mannhalt — is insufficient to overcome the Superior Court's findings at the issuance of the search warrant that Taa's information was reliable. *See State v. Mannhalt, supra* at 701. Additionally, Mannhalt's argument fails to address the dispositive issue in the previous appeal to this court — that the exclusionary rule does not apply to private persons.

Because there has been no change in the law nor any significant change in the facts that would render a manifest injustice if the law of the case doctrine were to be applied, we find that the suppression issue has been decided and need not be addressed again.

■ Mannhalt argues that res judicata (and by implication, the law of the case) can have no effect, because a federal writ of habeas corpus nullifies the conviction and the entire trial, requiring a de novo relitigation of *all* the issues in the case. Mannhalt offers no cases directly supporting this proposition, and we found none. Mannhalt cites *Fahlen v. Mounsey*, 46 Wn. App. 45, 728 P.2d 1097 (1986), *review denied*, 107 Wn.2d 1031 (1987), as instructive. At issue there was the effect of a writ of habeas corpus on a civil action, where the underlying conviction for rape supported the plaintiff's contention that the sex was not consensual. The court found that, for the purposes of CR 60(b), federal habeas relief

vacates a conviction. Unlike *Fahlen*, however, where habeas relief on the underlying criminal conviction directly and obviously affected the civil judgment, here the earlier decision was in the identical criminal case that was before the trial court for a second time. Without any authority suggesting that habeas relief mandates relitigation of every issue, it is necessary to look to the federal court order itself to determine the intended effect of the writ on the original suppression hearing.

In its finding that Kempton had a conflict of interest because of Morris' allegations, the Ninth Circuit specified four areas in which his performance was likely affected, the first three of which concerned Kempton's conduct at trial during Morris' testimony and do not involve the suppression hearing. The fourth effect was that the conflict of interest likely impacted Kempton's ability to plea bargain.

Mannhalt seems to argue that Kempton's representation was tainted at an early stage, and that it likely affected all his representation, including during the suppression hearing. Of the four effects, only the one based on Kempton's failure to pursue a plea bargain could have had any pretrial impact. However, a failure to plea bargain is entirely different from a failure to properly argue a suppression issue. We conclude that the federal court did not find a conflict of interest affecting Kempton's representation of Mannhalt at the suppression hearing. Had the federal court intended otherwise, it could have made that clear. As it was, Kempton argued the suppression issues vigorously at trial and on appeal in a spirited and apparently thorough manner, and we are satisfied the lower court did not err in refusing to relitigate the suppression issue.

### DISCOVERY OF BACKGROUND INFORMATION

Mannhalt contends the State failed to make a sufficient showing to justify nondisclosure of background information on certain prosecution witnesses, thereby violating Mannhalt's right of confrontation. The State contends the prosecution witnesses reasonably feared retaliation from Mannhalt, and it was not improper to keep their addresses secret.

The United States and Washington Constitutions guarantee an accused the right to be confronted with the witnesses against him. The right of confrontation includes the right of cross examination. A permissible purpose of the right of cross examination is to identify the witness "with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood". *Alford v. United States*, 282 U.S. 687, 691, 75 L. Ed. 624, 51 S. Ct. 218 (1931). The *Alford* Court reversed a conviction where the trial court denied the accused the opportunity to elicit the place of residence of an important prosecution witness.

An accused's right to confrontation is not absolute. In a concurring opinion in *Smith v. Illinois*, 390 U.S. 129, 133-34, 19 L. Ed. 2d 956, 88 S. Ct. 748 (1968), Justice White stated that, to the areas enumerated in *Alford* exceeding the bounds of proper cross examination, he would add "those inquires which tend to endanger the personal safety of the witness." Justice White's "personal safety exception", though never adopted by a majority of the Supreme Court, has been widely cited and applied by lower federal courts. *People v. Thurman*, 787 P.2d 646, 652 (Colo. 1990). The Ninth Circuit Court of Appeals also utilizes it. *Clark v. Ricketts*, 958 F.2d 851 (9th Cir. 1991) (there is no absolute right of an accused to have a jury hear a witness' name and address; trial court did not err in forbidding cross examination as to witness' address).

Washington courts have neither adopted the exception nor addressed it. A number of states have adopted the exception. *People v. Thurman, supra*, which reaffirmed principles set out in an earlier Colorado case, is instructive:

> Placing the initial burden on the witness or prosecution, we stated that "the danger claimed by the witness must in some way relate to the particular defendant. There must be a nexus such that the witness legitimately fears reprisal from the defendant or his associates." . . . "[A]fter the witness [has] made a showing that his safety would be endangered if he answered," the defendant has the duty to show that the information sought has "some materiality."

*Thurman,* at 653 (citing *People ex rel. Dunbar v. District Court,* 177 Colo. 429, 433, 494 P.2d 841 (1972)). *See Holmes v. State,* 557 So. 2d 933 (Fla. Dist. Ct. App. 1990) (threat must be actual; information must be disclosed to the trial judge in camera; judge must determine whether effective cross examination will be denied if the information is withheld; and the accused has the right to show a special need for the information).

In the present case, Sam Kline, Eric Taa, Delbert Sheeler and Jeff Counts all expressed reluctance to testify out of fear for their own safety and the safety of their families. Sheeler and Taa were fearful after receiving "hang-up" calls. Counts too expressed "great fear" at the prospect of testifying against Mannhalt at the later trial. During the first trial, there may have been a $50,000 contract out on Taa's life because of his willingness to testify. Based on several affidavits and on the statements of counsel, the trial court granted a protective order[1] pursuant to CrR 4.7(h)(4).[2]

Although the State did not present overwhelming evidence of threats, evidence was submitted to the trial court to support the finding that various witnesses' safety was in danger. The trial court was in the best position to determine

---

[1]The order found:

"1. The state has made a showing of cause that the physical safety of the four above-named witnesses is at risk if the defendant . . . were to learn their new names (if any), current addresses and telephone numbers.

"2. The state has and will continue to provide to the defense criminal conviction information and impeaching information about each of these witnesses and will provide the defendant's attorney with the opportunity to interview each of these witnesses before trial; and

"3. If the defendant specifies additional impeaching information about any of these four witnesses that he has not been able to obtain, the court will consider whether that specified information should be available to the defendant in discovery, and if so the court will consider what orders are necessary to provide that information . . .".

[2]CrR 4.7(h)(4) states:

"Upon a showing of cause, the court may at any time order that specified disclosure be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit the party's counsel to make beneficial use thereof."

the reality of the threats, and the records reflects sufficient basis for the findings.

The trial court provided defense counsel with copies of the criminal histories of each witness, and defense counsel interviewed each of the State's witnesses who were fearful for their safety. The prosecutor provided notes of interviews with Taa and Sheeler to defense counsel. The only information deleted from the criminal histories was that which would lead to knowledge of their whereabouts, such as the communities in which they committed crimes after 1981. During direct and cross examination, the witnesses freely admitted their various misdeeds. The witnesses did not appear to conceal their history of illegal acts — indeed, the prosecutor appears to have encouraged the witnesses' candor.

Given this degree of disclosure, we find the defendant suffered no serious prejudice to his ability to defend himself, and the trial court did not err in issuing the protective order.

## ACCOMPLICE INSTRUCTION

Mannhalt next contends that the trial court should have given a cautionary accomplice instruction to the jury. The State argues that no cautionary instruction was necessary where independent evidence substantially corroborated their testimony.

■ ■ Jury instructions are sufficient if, read as a whole, they correctly state the law, do not mislead the jury, and allow counsel to argue their theory of the case. *State v. MacMaster*, 113 Wn.2d 226, 233, 778 P.2d 1037 (1989). In *State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984), the court established a 3-part rule regarding accomplice instructions:

(1) it is always the better practice for a trial court to give the cautionary instruction whenever accomplice testimony is introduced; (2) failure to give this instruction is always reversible error when the prosecution relies *solely* on accomplice testimony; and (3) whether failure to give this instruction constitutes reversible error when the accomplice testimony is corroborated by independent evidence depends upon the extent of corroboration. If the accomplice testimony was substantially corroborated by testimonial, documentary or circumstantial

evidence, the trial court did not commit reversible error by failing to give the instruction.

*Harris*, at 155.

Mannhalt argues that the evidence was not sufficiently corroborated, citing *State v. Calhoun*, 13 Wn. App. 644, 536 P.2d 668 (1975). In *Calhoun*, the court noted that the only corroborating evidence connecting the defendant to the crime consisted of the fact that the defendant "had a gun and holster in a paper sack in the bedroom of the witness Smith's house for a short period of time . . .". *Calhoun*, at 648.

Here the record reflects substantial evidence corroborating the witnesses' statements on all the various counts. For example, as to count 4, Sam Kline and Delbert Sheeler were accomplice witnesses to the charge against Mannhalt of robbing the Royal Fork restaurant on Lake City Way in Seattle on July 26, 1980. Mannhalt introduced Kline to Sheeler as a good partner with whom to rob the Royal Fork. Kline and Sheeler used a Malibu automobile that Mannhalt had rented, and also got a 9-mm gun and a .38-caliber snub-nosed gun from Mannhalt to carry out the robbery. After the robbery, Kline and Sheeler drove to Mannhalt's donut shop, met him in the basement, and counted the money. This testimony was corroborated by the fact that the two bank bags seized from Mannhalt's business were from the Royal Fork, and a witness from the car rental company confirmed that Mannhalt had rented a Malibu, and had later come back into the office to claim a briefcase that was found in the rental car. The briefcase contained the same caliber gun as used in the robbery of the Royal Fork.

Count 5 concerned the robbery of F.X. McRory's in Seattle on August 24, 1980. Kline and Sheeler were the accomplice witnesses to this robbery. This time they used a Ford Thunderbird that Mannhalt had rented for Kline, and a breakdown shotgun provided by Mannhalt, which Sheeler claimed that Mannhalt had showed him how to use. This testimony was corroborated by victim witnesses, Mr. Taft and Ms. MacLean, who described the details of the robbery, including the amount of money and the use of the breakdown shotgun.

Additionally, Mannhalt admitted showing Sheeler how to use the shotgun, and documentary evidence showed that Mannhalt had rented the Thunderbird used in the robbery, thus establishing accomplice liability.

Count 9 concerned the attempted robbery of the Old Spaghetti Factory in Seattle on October 4, 1980. Sheeler testified that he told Mannhalt he was going to arrange a banquet to get the manager there early and alone. Mannhalt told Sheeler that it was a good idea. Once inside, Sheeler decided not to go through with it because there were too many people. Later, Kline returned with his partner, Dave Schliepts. They brought guns obtained from Mannhalt, and attempted to rob the manager when she exited, but she said she could not unlock the door. This accomplice testimony was corroborated by Mannhalt's rental of the black Thunderbird, and the testimony of the manager, Karen Kemper, who described the details of the attempted robbery consistently with Kline's testimony. Kemper later picked out a picture of Dave Schliepts in a photo montage.

Count 10 concerned the robbery of Mulligan's on October 12, 1980. Accomplice testimony was from Kline, Sheeler and Taa. Mannhalt discussed the robbery with Taa and Kline, and Mannhalt gave two guns, a .357 magnum and a 9 mm, to Kline to use in the robbery. After the robbery they talked to Mannhalt on the phone, and each contributed $100 for the use of Mannhalt's guns. This accomplice testimony was corroborated by the details the manager, Stephanie Paulson, provided in her testimony. Paulson also testified about the details of two rings that were stolen from her in the robbery. Police recovered these rings, which were inscribed "Terry to Steph, 10-22-66", during the search of Mannhalt's business.

Count 11 involved the robbery of the Hungry Turtle restaurant on October 13, 1980. Kline, Sheeler, and Taa were again the accomplice witnesses. Kline and Taa had discussed robbing the establishment with Mannhalt. Mannhalt again provided the guns, and afterward the robbers went to Kline's house, divided the money and jewelry, and each contributed $100 for the guns. This testimony was corroborated by the

victims of the robbery, who testified to the details of the robbery, including the type of guns used. A holster, ammunition for a 9-mm gun, and ammunition for a .357 magnum were found in the defendant's safe at his business, and a 9-mm gun and a .357-magnum gun were seized from Kline and Taa at the time of their arrest.

In light of the above, we find that the accomplice witnesses' testimony was substantially corroborated, and that under *Harris* the trial court did not commit reversible error by failing to give a cautionary accomplice instruction.[3]

Affirmed.

WEBSTER, A.C.J., and KENNEDY, J., concur.

---

[3]The verdict would almost certainly be the same had the instruction been given, because any reasonable juror, hearing the criminal background of the witnesses, would feel cautious about accepting that witness' testimony. Thus, even if we were to determine that the failure to give the cautionary instruction was error, the error would be harmless.