61 P.3d 1104 (2003)
148 Wash.2d 550
STATE of Washington, Respondent,
v.
Richard HARRISON, Petitioner.
No. 72332-0.
Supreme Court of Washington, En Banc.
Argued November 21, 2002.
Decided January 23, 2003.
*1105 Sharon Blackford, Washington Appellate Project, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Melinda Young, James Whisman, Andrea Vitalich, Deputy County Prosecutors, for Respondent.
MADSEN, J.
We granted review of this case to determine whether, when the State breaches a plea agreement and the defendant is granted the remedy of specific performance, the sentencing court on remand is bound by the original sentencing court's determination to impose an exceptional sentence.
Petitioner Harrison pleaded guilty after reaching an agreement with the State to treat two of Harrison's prior convictions as the same criminal conduct, resulting in an offender score of seven. At sentencing, the State breached its agreement by recommending a sentence based on an offender score of eight rather than a score of seven. The trial court accepted the State's characterization of Harrison's history and imposed what amounted to an exceptional sentence. The Court of Appeals reversed the original sentence and granted Harrison the remedy of specific performance. Accordingly, the case was remanded for a new sentencing hearing. State v. Harrison, noted at 100 Wash.App. 1049, 2000 WL 557655 (2000) (Harrison I). At the second sentencing hearing, the trial court agreed with the State's recommendation *1106 that Harrison's prior convictions constituted the same criminal conduct and that his offender score was seven. The trial court declined, however, to consider Harrison's argument against an exceptional sentence, holding that it was bound by either the "law of the case" doctrine or collateral estoppel from reconsidering that issue. Harrison appealed, and the Court of Appeals affirmed. State v. Harrison, noted at 110 Wash.App. 1017, 2002 WL 171131 (2002) (Harrison II).
We hold that the remedy of specific performance entitles the defendant to a reversal of the original sentence and a de novo sentencing hearing in which the State will abide by its plea agreement. The trial court, furthermore, is free to exercise its discretion regarding imposition of an exceptional sentence. We reverse the Court of Appeals and remand for resentencing.

PROCEDURAL HISTORY
The State charged Harrison with two counts of custodial assault.[1] In exchange for a guilty plea, the State agreed to recommend two consecutive terms of 43 months based on an offender score of seven. An offender score of seven yields a standard sentencing range of 33-43 months for each offense.
At Harrison's first sentencing hearing, the State did not abide by the plea agreement. The State had counted two of Harrison's prior convictions as the same criminal conduct, but the Department of Corrections (DOC) counted them separately to arrive at an offender score of eight rather than seven. An offender score of eight raises the standard sentencing range for each crime to 43-57 months. The State adopted the DOC's calculation, abandoning its plea agreement, and recommended an exceptional sentence consisting of two consecutive terms of 57 months rather than 43 months. The trial court agreed with the State's offender score calculation and additionally found that the facts warranted the imposition of an exceptional sentence of consecutive 57-month terms for each count of custodial assault.[2]
Harrison appealed, arguing that the State breached its plea bargain. In an unpublished opinion, Division I of the Court of Appeals reversed. Harrison I, slip op. at 7, 2000 WL 557655, *3. Harrison requested the remedy of "specific performance" which required the State on remand to make its promised recommendation. Id. at 3, 2000 WL 557655, *1 (citing State v. Miller, 110 Wash.2d 528, 536, 756 P.2d 122 (1988)). He argued that such remedy required a new sentencing hearing where the State would abide by its agreement to recommend a sentence based upon an offender score of seven. The State disagreed, contending that "specific performance" required it to recommend sentences of 43 months under a "correct" offender score of eight. The Court of Appeals responded that "[t]he State's arguments overlook the fact that there is nothing `incorrect' about ... an offender score of 7." Id. at 4, 2000 WL 557655, *2.
At the second sentencing hearing the State made its promised recommendation. Harrison did not present any new facts but argued against the imposition of an exceptional sentence. The trial court declined to consider Harrison's argument, holding that the judge's findings with respect to the exceptional sentence imposed in the first sentencing hearing were the "law of the case." The judge explained:
In my view, those are law of the case for me.
The only thing that has changed now is the difference in the offender score, and it's being sent back to me on remand to correct that mistake, so I'm abiding by what [the judge] did.

*1107 I will not change anything that she did in terms of what she stated as the bases for the exceptional sentence.
I'm not saying I agree with them, but I'll let them stand, and the Court of Appeals can decide whether or not they're appropriate or not.
Verbatim Report of Proceedings (Nov. 9, 2000) at 28-29. The judge then imposed an exceptional sentence of consecutive 43-month terms based on an offender score of seven, clarifying in a motion for reconsideration that the theory underlying his refusal to rule on the exceptional sentence was either the doctrine of the "law of the case" or collateral estoppel.
Harrison once again appealed, and the Court of Appeals affirmed the trial court in an unpublished opinion. Harrison II, slip op. at 1, 2002 WL 171131, *1. The court ruled that on remand the trial court was estopped from deciding the issue of whether an exceptional sentence was appropriate. Relying on State v. Collicott, 118 Wash.2d 649, 827 P.2d 263 (1992), the court ruled that "[o]nce the trial court has considered the propriety of an exceptional sentence, it is estopped from revisiting the issue at a later sentencing hearing." Harrison II, slip op. at 3, 2002 WL 171131, *1. The Court of Appeals also held that the "breach of a plea agreement does not mean that Harrison is entitled to relitigate every issue already decided by the court, particularly where the issue he wants to revisit is unrelated to the breach." Id. at 6, 2002 WL 171131, *2.
This court granted Harrison's petition for review at 147 Wash.2d 1002, 53 P.3d 1008 (2002).

ANALYSIS
Plea agreements are contracts, and the law imposes upon the State an implied promise to act in good faith. State v. Sledge, 133 Wash.2d 828, 839, 947 P.2d 1199 (1997). Because plea agreements concern fundamental rights of the accused, they also implicate due process considerations that require a prosecutor to adhere to the terms of the agreement. Id. (citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); United States v. Harvey, 791 F.2d 294, 300 (4th Cir.1986) (the defendant's underlying contract right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law).
This court has recognized two possible remedies where the State breaches a plea agreement. Miller, 110 Wash.2d at 531, 756 P.2d 122. The defendant has the choice to either withdraw his plea and be tried anew on the original charges or receive specific performance of the agreement. Id. Because a plea agreement is analogous to a contract, the defendant is entitled to a remedy which restores him to the position he occupied before the State breached. State v. James, 35 Wash.App. 351, 355, 666 P.2d 943 (1983). Furthermore, "the defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy." Miller, 110 Wash.2d at 535, 756 P.2d 122.
In this case, the Court of Appeals granted Harrison's request for specific performance. Harrison I, slip op. at 7, 2000 WL 557655, *3. That remedy requires the State to make its promised recommendation at a new sentencing hearing. In re Pers. Restraint of Powell, 117 Wash.2d 175, 199, 814 P.2d 635 (1991) (addressing the definition of specific performance of plea agreement where the Indeterminate Sentence Review Board would decide appropriate minimum sentence); see also State v. Van Buren, 101 Wash.App. 206, 218, 2 P.3d 991 (2000); State v. Henderson, 99 Wash.App. 369, 379, 993 P.2d 928 (2000). While the State must uphold its end of the plea agreement on remand, the court retains the ultimate decision on sentencing. Powell, 117 Wash.2d at 200, 814 P.2d 635.
Washington cases generally follow the United States Supreme Court's recommendation that the petitioner should be resentenced by a different judge when specific performance is the elected remedy for the State's breach. Santobello, 404 U.S. at 263, 92 S.Ct. 495; see Sledge, 133 Wash.2d 828, 947 P.2d 1199; State v. Van Buren, 112 Wash.App. 585, 49 P.3d 966 (2002); State v. Williams, 103 Wash.App. 231, 239, 11 P.3d *1108 878 (2000); James, 35 Wash.App. at 356, 666 P.2d 943.
The question in this case is whether the remedy of specific performance is limited by collateral estoppel or the "law of the case" doctrine. In Harrison I, the court granted the remedy of specific performance which required a reversal of Harrison's prior sentence and remand for resentencing in which the State would recommend a sentence based on an offender score of 7. Harrison I, slip op. at 7, 2000 WL 557655, *3. Harrison claims that such a remedy entitles him to a de novo sentencing hearing, placing him in the same position that he occupied before the State breached the plea agreement. James, 35 Wash.App. at 355, 666 P.2d 943. He argues that the trial court erred in holding that it was bound by decisions made at the first sentencing hearing and that he has yet to have the one fair sentencing hearing to which he is entitled.
Relying on State v. Mannhalt, 68 Wash. App. 757, 760, 845 P.2d 1023 (1992), the State contends that the breach of a plea agreement does not mean Harrison is entitled to relitigate every issue already decided, particularly where the issue he wants to revisit is unrelated to the beach. In Mannhalt, the defendant was convicted of conspiracy, six counts of robbery, one count of attempted robbery, one count of possession of stolen property in the first degree, and three counts of possession of stolen property in the second degree. Id. at 759, 845 P.2d 1023. The defendant appealed the trial court's denial of his motion to suppress evidence, and the Court of Appeals affirmed. Id; see also State v. Mannhalt, 33 Wash.App. 696, 658 P.2d 15 (1983). Mannhalt subsequently sought and was denied habeas corpus relief in federal district court. Mannhalt, 68 Wash.App. at 759, 845 P.2d 1023. On appeal, the Ninth Circuit overturned Mannhalt's conviction based on an attorney conflict of interest that occurred during the trial. Id. at 761-62, 845 P.2d 1023; see also Mannhalt v. Reed, 847 F.2d 576 (9th Cir.1988). The court, however, specifically found that the conflict did not affect the litigation of pretrial suppression issues. Mannhalt, 68 Wash.App. at 761-62, 845 P.2d 1023.
The State recharged Mannhalt. During pretrial hearings, the superior court ruled that Mannhalt could not relitigate his motion to suppress evidence because it had been adequately litigated before the first trial and was res judicata as to the second. Id. Mannhalt was convicted and appealed, arguing that he was entitled to relitigate all pretrial issues since the Ninth Circuit had vacated his conviction. Id. at 760-61, 845 P.2d 1023. The Court of Appeals disagreed, reasoning first that the pretrial issues had been decided and affirmed on appeal making those rulings the "law of the case." Id. at 763, 845 P.2d 1023. The court also explained that because the Ninth Circuit specifically held that the pretrial litigation was not tainted by the conflict that occurred during trial, the defendant was not entitled to relitigate the pretrial issues. Id. at 763-64, 845 P.2d 1023.
The State urges Mannhalt as authority for limiting the issues that can be considered on remand in this case. The State's reliance on Mannhalt is misplaced. Initially, in Mannhalt the pretrial issues were raised and affirmed on appeal. Thus, on remand the pretrial rulings were the "law of the case." Here, the trial court's imposition of an exceptional sentence was never challenged or decided on appeal. Additionally, Mannhalt actually supports Harrison's position that he is entitled to relitigate the portion of his trial that was tainted by the State's breach. Just as Mannhalt received the remedy of a new trial because his original trial was tainted by an attorney conflict of interest, Harrison is entitled to the remedy of a completely new sentencing hearing because the original sentencing was tainted by the State's breach.
As noted, the purpose of a remedy when the State breaches a plea agreement is to restore the defendant to the position he held before the breach, James, 35 Wash.App. at 355, 666 P.2d 943, and before the breach, Harrison had been convicted but not sentenced. Specific performance requires a reversal of the original sentence and remand for a new sentencing, preferably before a different judge, where the State will make its promised recommendation and the judge will exercise its sentencing discretion.
*1109 The State argues, though, that this court's decision in State v. Collicott, 118 Wash.2d 649, 827 P.2d 263 (1992) (Collicott II) is to the contrary and holds that once the trial court has considered the propriety of an exceptional sentence it is estopped from revisiting the issue at a later sentencing hearing. We disagree.
In State v. Collicott, 112 Wash.2d 399, 771 P.2d 1137 (1989) (Collicott I), the defendant originally pleaded guilty to burglary, rape, and kidnapping. Collicott II, 118 Wash.2d at 650, 827 P.2d 263. At sentencing, the trial court concluded that the crimes constituted the same criminal conduct and specifically declined to impose an exceptional sentence. Id. at 661, 827 P.2d 263. The Court of Appeals reversed and held that the crimes did not encompass the same criminal conduct. Id. at 651, 827 P.2d 263. This court disagreed and reversed. Id. However, this court also found that the trial court had miscalculated the offender score and remanded for the trial court "`to redetermine the petitioner's offender score.'" Id. at 651-52, 827 P.2d 263 (quoting Collicott I, 112 Wash.2d at 412, 771 P.2d 1137).
Following resentencing, the case once again came before this court for review. Collicott II, 118 Wash.2d 649, 827 P.2d 263. This time the court held that Collicott I was incorrect and that the crimes did not encompass the same criminal conduct. Id. at 657-58, 827 P.2d 263. The lead opinion went on to conclude that because the first trial court had specifically declined to impose an exceptional sentence, collateral estoppel barred the second court from imposing an exceptional sentence. Id. at 661-64, 827 P.2d 263.
The lead opinion in Collicott II did not command a majority of the court on the collateral estoppel issue. Five justices concurred in the analysis of "same criminal conduct" but specifically disavowed the discussion of collateral estoppel as unnecessary to the decision. Id. at 670, 827 P.2d 263 (concurring opinion of Durham, J.). Accordingly, the discussion of collateral estoppel is dicta and does not prevent the trial court in this case from considering the imposition of an exceptional sentence on remand. In any event, Collicott II is distinguishable because it did not deal with the breach of a plea agreement by the State.
The State next argues that this court's collateral estoppel cases support its position. Collateral estoppel, or issue preclusion, does apply in criminal cases, and it precludes the same parties from relitigating issues actually raised and resolved by a former verdict and judgment. State v. Williams, 132 Wash.2d 248, 253-54, 937 P.2d 1052 (1997); State v. Peele, 75 Wash.2d 28, 30, 448 P.2d 923 (1968). The policy behind collateral estoppel is to "prevent[] relitigation of an issue after the party against whom the doctrine is applied has had a full and fair opportunity to litigate his or her case." Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262, 956 P.2d 312 (1998). Nonetheless, Washington courts follow federal precedent that in criminal cases, collateral estoppel is not to be applied with a "hypertechnical" approach but rather, "with realism and rationality." Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (cited with approval in State v. Harris, 78 Wash.2d 894, 896-97, 480 P.2d 484 (1971)); see also State v. Kassahun, 78 Wash.App. 938, 948-49, 900 P.2d 1109 (1995).
Before collateral estoppel will apply to preclude the relitigation of an issue, all of the following requirements must be met: (1) the issue in the prior adjudication must be identical to the issue currently presented for review: (2) the prior adjudication must be a final judgment on the merits; (3) the party against whom the doctrine is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) barring the relitigation of the issue will not work an injustice on the party against whom the doctrine is applied. Nielson, 135 Wash.2d at 262-63, 956 P.2d 312.
The State contends that all four requirements of collateral estoppel are satisfied in this case. We disagree. As Harrison correctly observes, collateral estoppel does not apply because the original sentence no longer exists as a final judgment on the merits. Nielson, 135 Wash.2d at 262-63, 956 *1110 P.2d 312. As we have stated, the act of "an appeal does not suspend or negate ... collateral estoppel aspects of a judgment entered after trial in the superior courts," but collateral estoppel can be defeated by later rulings on appeal. Id. at 264, 956 P.2d 312 (citing Riblet v. Ideal Cement Co., 57 Wash.2d 619, 621, 358 P.2d 975 (1961); Lejeune v. Clallam County, 64 Wash.App. 257, 265-66, 823 P.2d 1144 (1992)). On Harrison's first appeal, the court "reverse[d] Harrison's sentences and remand[ed] for resentencing with the State's recommendation of an offender score of 7." Harrison I, No. 43731-3, slip op. at 7, 2000 WL 557655, *3. His entire sentence was reversed, or vacated, since "reverse" and "vacate" have the same definition and effect in this contextthe finality of the judgment is destroyed. Accordingly, Harrison's prior sentence ceased to be a final judgment on the merits, and collateral estoppel does not apply. Nielson, 135 Wash.2d at 262-63, 956 P.2d 312.
Finally, the State argues that the first sentencing court's decision to impose an exceptional sentence became the "law of the case." The "law of the case" doctrine generally "refers to `the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand' "or to "the principle that an appellate court will generally not make a redetermination of the rules of law which it has announced in a prior determination in the same case." Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 113, 829 P.2d 746 (1992) (quoting 15 Lewis H. Orland & Karl B. Tegland, Washington Practice, Judgments § 380, at 55 (4th ed.1986) (footnote omitted)).
The doctrine serves to "promote[ ] the finality and efficiency of the judicial process by `protecting against the agitation of settled issues.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 118 (1984)). The courts apply the doctrine in order "to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts." 5 Am.Jur.2d Appellate Review § 605 (2d ed.1995) (footnote omitted).
In this case, neither Harrison I nor II decided the merits of the exceptional sentence. Accordingly, the concerns addressed by the doctrine simply are not present in Harrison's case. Additionally, to apply the "law of the case" doctrine here to require the second sentencing court to impose an exceptional sentence results in manifest injustice. Folsom v. County of Spokane, 111 Wash.2d 256, 264, 759 P.2d 1196 (1988) (citing Greene v. Rothschild, 68 Wash.2d 1, 10, 402 P.2d 356 (1965); 414 P.2d 1013). In Harrison I, the court's remedy sought to place Harrison in the position he occupied prior to the State's breach. Harrison I, slip op. at 7, 2000 WL 557655, *3; James, 35 Wash.App. at 355, 666 P.2d 943. Applying the "law of the case" doctrine to deny Harrison a de novo sentencing hearing prevents Harrison from receiving the remedy granted by the Court of Appeals. To deny Harrison his rightful remedy would not serve the ends of justice.

CONCLUSION
The trial court erred in holding that either collateral estoppel or the "law of the case" doctrine prevented the court from independently determining whether an exceptional sentence was warranted. Neither doctrine applies because the State breached its plea agreement with Harrison and he was granted the remedy of specific performance. Specific performance requires a reversal of the prior sentence and a remand for de novo sentencing with the State to abide by its plea agreement.
Accordingly, we reverse the Court of Appeals and remand for a new sentencing hearing.
ALEXANDER, C.J., JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, JJ., and SMITH and WEBSTER, JJ. Pro Tem., concurring.
NOTES
[1] The facts underlying the crimes are not relevant to this court's review; thus, they need not be related.
[2] Generally, when the court sentences an offender for two or more offenses, the sentences are to be served concurrently pursuant to RCW 9.94A.589(1)(a). The court, however, may impose consecutive sentences under the exceptional sentence provisions of RCW 9.94A.535 which provide the court with authority to impose a sentence outside the standard sentencing range if it finds "substantial and compelling reasons justifying an exceptional sentence." In this case, the State's recommendation for consecutive terms amounted to an exceptional sentence.