[No. 5093-9-III. Division Three. July 14, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. FREDDIE LEE JAMES, *Appellant.*

*Catherine Campbell,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David Waterbury, Deputy,* for respondent.

GREEN, J.—On August 2, 1979, defendant was charged with first degree robbery. He pleaded guilty to a reduced charge of second degree robbery pursuant to a plea bargain

agreement in which the State agreed to recommend probation. While on release pending sentence, he was arrested on charges of committing two additional misdemeanors. In light of those arrests, the prosecuting attorney refused to recommend probation. Although defense counsel argued probation was still justified, defendant was sentenced December 10, 1979, to 10 years' imprisonment.

Defendant filed a personal restraint petition challenging the sentence based on the State's refusal to honor the plea bargain. The court in *In re James,* 96 Wn.2d 847, 851–52, 640 P.2d 18 (1982) granted the petition and

remanded [the case] to Superior Court to determine whether to permit petitioner to withdraw his plea or to grant specific performance of the bargain. The appropriate remedy is for the trial court to decide, with the defendant's preference to be accorded considerable weight.

(Footnote omitted.)

On remand, defense counsel opened by requesting that he "be allowed to call [defendant's] pastor to speak on his behalf, and I'd also ask to call Mr. James to ask him a few questions . . ." The deputy prosecuting attorney proceeded to recommend probation. Thereafter, defendant, his pastor, and Mr. Beauchamp (engaged in job training for persons released from institutions) testified on defendant's behalf. Defense counsel then urged the court to grant probation or, if the sentence was imprisonment, to recommend intensive parole.

In addition to the testimony and assertions of defense counsel, the court considered the statement of the victim, a 16–year–old boy. This statement indicates defendant approached the victim in a parking lot in Yakima and asked him to buy some dope. The victim refused, telling defendant he had no money. Defendant then

just punched me right in the face, hard. It kind of stunned me. He said, "how much money do you have" and I told him twenty cents. He grabbed my wallet and he pulled out a dollar . . . and I pulled twenty cents out of my pocket and he ripped my wallet all up and then

punched me a couple more times in the face . . . just kept insisting that I had more money. And he grabbed me by the hair and threw me on the ground and . . . kicked me in the nuts and then . . . told me not to move. Kept telling me not to move, every time he would throw me down I would get back up and I would kind of back off when he hit me and I would put my hand up to my face and he told me not to move. He hit me a bunch of times and then he kicked me in the nuts and just kept hasseling [sic] me and told me to get some money some place. . . . He told me to suck his dick. I told him I wouldn't do it. Then he kicked me in the nuts again and just started punching me and grabbing my hair and twisting my head around and threw me on the ground and told me to suck his dick. And I said I won't do it. . . . He told me to do it or else he would blow my head off. . . . He told me to get out of here . . .

The police report indicates that when the police arrived, the victim was crying, his face bleeding and mouth swollen.

In light of the victim's statement, the court commented:

It disturbs me greatly that there was . . . a total unprovoked, vicious, mean, type of activity that took place here with some pretty severe bodily harm as far as this young victim is concerned.

. . .

. . . [I]n view of the real severity of the crime that was committed here, as indicated by the victim in his statement, there's no question in my mind that the initial sentence was proper in the first place. I'm not, certainly, in my own mind, satisfied at this point in time that Mr. James is ready to be released.

The court further observed the parole board had not taken any action to release defendant from the institution.

On the basis of this evidence, the sentencing judge stated he could "see no other alternative" but to reaffirm the original sentence. However, he agreed to recommend intensive parole if the parole board requested his input. Defendant appeals.

First, defendant claims the court erred in failing to inquire as to his choice of remedy—withdrawal of the guilty plea or specific performance of the plea bargain. We find no

error.

Defendant was represented by counsel both during the former sentencing and on remand. As outlined, the hearing commenced by defense counsel requesting he be allowed to present testimony on defendant's behalf. Defendant made no request to withdraw his plea. To the contrary, defense counsel urged probation or intensive parole after informing the court he spent an hour with the defendant "over the distinction between a new trial and sentencing". Defendant testified he was "aware [he was] in court for sentencing" and "that the Judge has the decision on his shoulders as to whether to grant [him] probation or send [him] back to the institution". It is apparent defendant chose to be resentenced. If he had any other desire, he should have made it known. The fact he believed he would receive milder punishment does not necessitate withdrawal of the plea. *State v. Faulconer*, 26 Wn. App. 401, 613 P.2d 184, *review denied*, 94 Wn.2d 1012 (1980).

Second, defendant contends specific performance of the bargain as mandated by *In re James* was not granted because he should have received probation in accordance with the prosecution's recommendation. We disagree.

■ A plea bargain is analogous to a contract right; where the prosecutor breaches the agreement, the defendant is entitled to the remedy which restores him to his position before the breach. *See generally* J. Bond, *Plea Bargaining and Guilty Pleas* § 7.19 (2d ed. 1982); Note, *The Legitimation of Plea Bargaining: Remedies for Broken Promises*, 11 Am. Crim. L. Rev. 771, 785 (1973). The State's part of the bargain here was that the prosecution would *recommend* probation. Hence, specific performance of this bargain is resentencing before a different judge with the benefit of that recommendation. *Santobello v. New York*, 404 U.S. 257, 264, 30 L. Ed. 2d 427, 92 S. Ct. 495, 499 (1971); *United States v. Ewing*, 480 F.2d 1141 (5th Cir. 1973); *People v. Davis*, 94 Ill. App. 3d 809, 419 N.E.2d 724, 727 (1981); *People v. Richards*, 46 A.D.2d 619, 360 N.Y.S.2d 2, 3 (1974); *Stone v. Cupp*, 39 Or. App. 473, 592

P.2d 1044 (1979). That was done here.

This case is distinguishable from *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977), where the prosecutor, with the court's approval, promised not to file certain charges, and *State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975), where the pleas were based on misinformation concerning the length of the mandatory minimum sentence. Here, the prosecutor did not promise defendant probation; indeed, he could not do so. The power to grant probation is discretionary and the court is not bound by the reports or recommendations of the prosecutor or any other agency. *In re Hughes,* 19 Wn. App. 155, 575 P.2d 250 (1978); *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975). Nor is there a basis to infer defendant was misinformed of this fact; to the contrary, he stated he was aware of the court's sentencing discretion.

Thus, notwithstanding the language of *In re Palodichuk,* 22 Wn. App. 107, 589 P.2d 269 (1978), we construe specific performance under these circumstances to require resentencing by a different judge with the prosecutor making the agreed–upon recommendation. To do otherwise destroys the discretion of the sentencing judge who has the obligation of protecting the public interest as well as doing that which may be best for the reformation of the defendant. We therefore find no error.

Defendant's contention that the prosecutor violated the plea agreement by not making an unfettered recommendation as originally promised has no merit. The record does not support a contention the prosecutor's recommendation was equivocal.[1] Defendant argues the prosecutor was required by *State v. Peterson,* 29 Wn. App. 655, 630 P.2d 480 (1981), *aff'd,* 97 Wn.2d 864, 651 P.2d 211 (1982) to

---

[1]The incident referred to by defendant occurred when the court stated it did not know why the parole board had not taken action toward releasing defendant. Defense counsel responded that he thought the "machinery of the parole [was] halted or inhibited" while the personal restraint petition to the Supreme Court was pending. The prosecutor merely responded it was his opinion parole was not affected. This comment did not relate to the recommendation.

give his reasons for the recommendation. That case, however, addressed the court's refusal to honor a defendant's *request* that the prosecutor explain the reasons underlying the recommendation.

> [A] defendant who makes such a request runs a calculated risk that the prosecutor's statements will not be favorable. Provided that the prosecutor reasonably explains his recommendation for leniency, the defendant will be deemed to have waived his right to assert that the prosecutor has breached his plea agreement.

*State v. Peterson, supra* at 869. Here, perhaps for tactical reasons, defendant did not request that the prosecutor elaborate upon the recommendation. We decline to hold that the prosecutor must do so in the absence of such a request.

Affirmed.

ROE, C.J., and MUNSON, J., concur.

Reconsideration denied August 15, 1983.

Review denied by Supreme Court November 4, 1983.