[No. 23154-9-II. Division Two. February 11, 2000.]
THE STATE OF WASHINGTON, *Respondent*, v. DARRYL A. HENDERSON, *Appellant*.

---

*Robert Mason Quillian* and *Thomas Edward Doyle*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

BRIDGEWATER, C.J. — Darryl A. Henderson appeals the trial court's imposition of a standard range sentence of 41 months upon resentencing which was necessitated by misinformation at the original sentencing, which led to the miscalculation of his standard range. We hold that when "specific performance" is the remedy selected by the defendant, the prosecutor is bound to make the recommendation it agreed to make, but the court is not required to sentence according to that recommendation. We affirm.

On September 2, 1997, Henderson entered an *Alford*[1] plea to a charge of unlawful possession of a firearm in the first degree, stating that he wanted to take advantage of the State's recommendation of a sentence at the low end of the standard range. The parties calculated Henderson's standard range as 26 to 34 months. The prosecuting attorney agreed to and did recommend 26 months. The court followed the State's recommendation and imposed a sentence of 26 months.

On March 11, 1998, the parties appeared before the court for resentencing. The Department of Corrections had informed the State that, according to sentencing guidelines enacted the previous July, Henderson's standard range should have been calculated as 41 to 54 months.

The State informed the court that although Henderson could withdraw his plea, he was choosing to maintain the plea and join the State in asking the court to impose an exceptional sentence downward to 26 months "so that he

---

[1]An *Alford* plea is entered when the defendant denies guilt but pleads guilty in order to obtain a lesser penalty. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

can, in fact, get the benefit of his negotiations in this case." The court informed the defendant that he was not bound by the original plea agreement; and the matter was set over for a week for Henderson to decide to either withdraw his plea or seek enforcement of the plea agreement. At sentencing, the court rejected the joint request and imposed a sentence of 41 months, the low end of the revised standard range. The court explained its decision as follows:

> I guess what I am looking at is what I would have done had this been presented to me with the appropriate standard range back at the original sentencing, and I'm also looking at what Mr. Henderson has done so far, which apparently is act responsibly within the Department of Corrections.
>
> However, I would not have entertained an exceptional sentence downward in this particular case. Mr. Henderson's got three prior assault convictions, he's got a prior firearm offense, he's got a prior drug offense, and an escape. You couple that with the fact that this is another firearm offense, which this Court has particularly low tolerance to.
>
> I don't think an exceptional sentence downward would be appropriate. I don't look at it in the sense that the State does. I wasn't focusing on 26 months back at the time of the original sentence. What I was focusing on was the low end of the standard range. I think he deserves the low end of the standard range because of his willingness to plead guilty and to take some responsibility for the offense, which he did, which is appropriately credited when I give him the low end of the standard range with regard to the new standard range.
>
> So I think the 41 months, which is the low end of the newly-computed standard range, is the appropriate sentence, and I am going to impose that.

I

The State argues at the outset that the issue is not appealable because it involves a challenge to a standard range sentence.

 A sentence within the standard range generally is

not appealable. RCW 9.94A.210(1). But an appellant may challenge the procedure used by the court to impose a standard range sentence. *State v. Ammons*, 105 Wn.2d 175, 182-83, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). Thus, where "[t]he central issue involves a matter of statutory construction, not a claim that the trial court abused its discretion," an appellate court will allow a challenge to a standard range sentence. *State v. Onefrey*, 119 Wn.2d 572, 574 n.1, 835 P.2d 213 (1992).

Henderson's challenge is not aimed at the length of his sentence per se, but at the court's refusal to follow the State's recommendation. His argument is that he was not allowed the specific performance remedy of being sentenced within the original standard range. Prior decisions have addressed the merits of similar appeals, despite the trial court's imposition of a standard range sentence. *See State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988); *see also State v. Moore*, 75 Wn. App. 166, 876 P.2d 959 (1994) and *State v. Skiggn*, 58 Wn. App. 831, 795 P.2d 169 (1990). Thus, we will consider Henderson's appeal.

## II

Henderson argues that the judge was required at resentencing to sentence within the standard range agreed upon at the time of the guilty plea. The issue is whether specific performance of a plea agreement means automatic sentencing according to the original agreement between the defendant and the prosecutor.

A defendant may enter a plea to a lesser offense in exchange for the prosecutor's agreement not to file a particular charge or in exchange for the prosecutor's recommendation to the court that a particular sentence be within the standard range. RCW 9.94A.080. A plea agreement is analogous to a contract right and a prosecutor is required to adhere to the terms of the agreement. *State v. Gutierrez*, 58 Wn. App. 70, 74, 791 P.2d 275 (1990); *State v. James*, 35 Wn. App. 351, 355, 666 P.2d 943, *review denied*, 100 Wn.2d

1023 (1983). A sentencing judge, however, is not bound by any recommendation contained in the plea agreement. RCW 9.94A.090(2); *Gutierrez*, 58 Wn. App. at 74-75. A defendant is to be so informed at the time of the hearing. *State v. Jones*, 46 Wn. App. 67, 70, 729 P.2d 642 (1986); DA-VID BOERNER, SENTENCING IN WASHINGTON § 12.26, at 12-51 (1985).

■ "A defendant must understand the sentencing consequences for a guilty plea to be valid." *Miller*, 110 Wn.2d at 531. Where a defendant has entered a guilty plea pursuant to a plea agreement based on misinformation, the defendant may choose between two possible remedies: " 'to withdraw his plea and be tried anew on the original charges, or [ ] specific performance of the agreement.' " *Id.* (quoting *State v. Tourtellotte*, 88 Wn.2d 579, 585, 564 P.2d 799 (1977)). "[T]he defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy." *Id.* at 535. Henderson selected specific performance as his remedy, and the State did not object.

Although both Henderson and the State agree that Henderson was entitled to specific performance of the plea agreement, they disagree on the meaning of "specific performance." The State contends that specific performance means that the prosecutor must comply with the plea agreement by making the agreed recommendation at resentencing. Henderson asserts that specific performance means that the sentencing judge must impose a sentence within the standard range the parties believed to be applicable. Henderson therefore argues that he was not given specific performance because the sentencing judge did not sentence within the original recommended standard range.

Henderson supports his position with *State v. Miller*, which he contends is factually analogous to this case. But *Miller* merely reiterated the general rule that the defendant may choose specific performance (or withdraw his plea). *Miller*, 110 Wn.2d at 531-32. The court expressly disapproved of prior decisions holding that withdrawal of the plea is the only remedy for errors in a plea agreement

discovered before sentencing. *Id.* at 533. *Miller* does not define specific performance.

Henderson also cites *State v. Cosner*, 85 Wn.2d 45, 530 P.2d 317 (1975), for the rule that when specific performance is involved, the court can violate statutory provisions when granting the specific performance option. Henderson urges us to ignore the fact that the original standard range sentence would be contrary to statute because a deviation from the statute was allowed in *Cosner*.

There is a split of authority among the divisions of the Court of Appeals over the meaning of "specific performance." This court, in *In re Personal Restraint of Palodichuk*, 22 Wn. App. 107, 111, 589 P.2d 269 (1978), has held that specific performance of a plea bargain agreement is "resentencing done before a different judge with the order that he impose the sentence agreed upon in the plea bargain." But Division Three specifically rejected *Palodichuk*, holding that "we construe specific performance to require resentencing before a different judge with the prosecutor making the agreed-upon recommendation, without equivocation." *State v. Morley*, 35 Wn. App. 45, 48, 665 P.2d 419 (1983); *see also State v. James*, 35 Wn. App. 351, 666 P.2d 943, *review denied*, 100 Wn.2d 1023 (1983). *Palodichuk, Morley*, and *James* all cite *Santobello v. New York*, 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), for support.

Although the state Supreme Court has not expressly resolved the conflict between *Palodichuk, Morley*, and *James*, it has addressed the definition of specific performance of a plea bargain agreement where the Indeterminate Sentence Review Board would decide on the appropriate sentence. *See In re Personal Restraint of Powell*, 117 Wn.2d 175, 814 P.2d 635 (1991), *cert. denied*, 516 U.S. 825 (1995). In *Powell*, two defendants agreed to plead guilty to their crimes and as a part of the plea agreements, and the prosecutor agreed to recommend the minimum sentence, 20 years. *Id.* at 198. But when the defendants' cases were reviewed under the new law, the prosecutor and the judge

both recommended that the Board sentence the defendant to substantially more than 20 years. *Id.* The parties agreed that the plea agreements were violated and each defendant sought specific performance, specifically that the Board be required to set his minimum sentence at 20 years. *Id.* at 199. The court engaged in the following discussion:

> Specific performance is one of the two remedies which a defendant can seek when a prosecutor has breached a plea agreement and it is the only one sought here. *Miller,* [110 Wn.2d] at 535[, 756 P.2d 122 (1988)]. [Defendant] argues that the remedy of specific performance means that he can require the Board to set his minimum sentence in conformance with the 20-year sentence which the prosecutor initially agreed to recommend. The prosecutor, however, has no authority to bind the Board. *See* RCW 9.95.009(2). Moreover, even if the prosecutor did have such power, it did not promise an actual minimum term, but only promised to recommend one. This case is therefore distinguishable from *State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975), where this court required the Board to set a minimum term in conformance with the prosecutor's representation of what defendant's minimum *would* be, even though this resulted in a sentence which was less than the mandatory minimum for the crime. In the present case, there was no representation of what the sentence *would* be, but only what the prosecutor would recommend that it be.
>
> We therefore hold that in the context of this case, specific performance of the plea bargain only requires that the prosecutor recommend what he or she agreed to recommend.

*Powell,* 117 Wn.2d at 199. *Powell* is persuasive in this case. Like the Board, the trial court is not "bound by any recommendations" contained in the plea agreement. RCW 9.94A.090(2); *See also State v. Wakefield,* 130 Wn.2d 464, 471, 925 P.2d 183 (1996). And like the plea agreement in *Powell,* Henderson's agreement with the prosecutor promised only that the prosecutor would recommend 26 months, not that he would actually get that sentence. Thus, under *Powell,* the State's agreement to recommend a sentence of 26 months does not bind the court; specific per-

formance entitles Henderson only to the State's recommendation, not to the actual sentence.

Henderson argues that *Powell* should not control in this case, relying on the case of *State v. Cosner*, 85 Wn.2d 45. In *Cosner*, the informations for two of the defendants wrongly advised them that the mandatory minimum for their crimes would be five years. *Id.* at 49. In fact, the mandatory minimum was seven and one-half years and the Board of Prison Terms and Paroles set their sentences accordingly. *Id.* The court found that when the State sought to use the enhanced penalties applicable to crimes involving a deadly weapon,[2] due process requires the State to put the accused on notice in the information of the applicable sentence. *Id.* at 50. Finding that the State had failed to meet that obligation, in that the defendants were misinformed of the length of their sentences, the court remanded to the Board with the direction that it set the minimum terms "in accordance with [the defendants'] understanding of the length thereof at the time of their pleas." *Id.* at 52.

The court's ruling in *Cosner* was that the State had violated the defendants' due process rights by failing to meet its obligation to inform them that it would seek an enhanced sentence for possession of a firearm during a felony. In *Cosner*, the error was attributable solely to the State—it was a defective information. This is a significant distinction. *Cosner* is not persuasive in this particular factual situation.

Unlike the defendants in *Cosner*, Henderson was not unequivocally advised of what his sentence would be. It is his own statement on plea of guilty that misstates his criminal history (leaving off one prior felony) and states an incorrect standard range. Henderson was also told by the judge before he first entered his plea that the sentencing range in his statement could change:

---

[2]The statutes applicable were RCW 9.41.025 (former) and RCW 9.95.040.

THE COURT: If you have more felony history than is set out in paragraph 6 of this form, that standard range might be higher, the prosecutor's recommendation different, and you couldn't later withdraw your plea of guilty. Do you understand that?

THE DEFENDANT: Yes.

In addition, his Statement on Plea of Guilty contained a provision advising him that the range could be affected if the criminal history did not include all of his prior offenses:

If I am convicted of any new crimes before sentencing, or if any **additional criminal history is discovered**, both the standard range sentence and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered, even though a mandatory sentence of life imprisonment without the possibility of parole is required by law.

Thus, in this case, the State did not promise that Henderson would receive a specific sentence. The State promised only that it would recommend the low end of the range, which it did. Thus, the facts here are closer to those in *Powell* than *Cosner*: the error was not solely the error of the State; there is a statute specifically indicating that the recommendation of the State is not binding; and the State here, as in *Powell*, made only a recommendation, not a declaration in the Information.

*Miller* has discussed the holding in *Cosner* in relation to specific performance. The court held:

We have held that where fundamental principles of due process so dictate, the specific terms of a plea agreement based on a mistake as to sentencing consequences may be enforced despite the explicit terms of a statute. . . . *Cosner* demonstrates that the court is not absolutely bound by the statutory mandatory minimum where it conflicts with the terms of a plea agreement.

*Miller*, 110 Wn.2d at 532. *Miller* thus expresses the range

of possibilities for an appellate court's remedy for a due process violation. To correct this type of due process violation, the court can go outside the statutory bounds, but is not required to do so.

*Powell* does not overrule *Cosner,* but it distinguishes it. The only way to harmonize *Powell* and *Cosner* is to conclude that *Cosner* permits the court to fashion a remedy that is outside the perimeters of the statute; it does not require the court to order that result. *Powell* addresses whether in fashioning the cure for the due process violation, i.e. specific performance, the court is bound by the State's recommendation. *Powell* stands for the principle that the court is not bound. Thus, here the prosecutor was bound to recommend what it had agreed to, but the sentencing court was not bound to follow the recommendation, either as to range or specific sentence. Therefore, under *Powell*, the sentencing court in this case had the discretion to sentence the defendant as it did.

We hold that specific performance of a plea agreement means only that the prosecutor is required to recommend what he or she agreed to recommend and the court has discretion to fashion an appropriate remedy within the bounds described in *Miller.* By our holding, we do not mean to affect cases where the defendant has met his burden of showing that he was actually misled by the State and that the State is responsible for the mistake, or where there is prosecutorial misconduct.

Because Henderson was advised correctly by the court that the judge would not be bound by the agreement and then given his choice of remedy, the trial court did not err when it imposed a sentence outside the standard range the parties originally believed applicable.

Affirmed.

MORGAN and ARMSTRONG, JJ., concur.