IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38987-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FREDDIE LEE GHOLSTON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J.P.T.[†] — We once again address implications from the Washington

Supreme Court's watershed ruling in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521

(2021). In this instance, previous decisions by the Supreme Court and this court, some

unavailable to the superior court at the time of its rulings on appeal, provide answers

although the precedent requires us to navigate nuanced principles of collateral attacks,

resentencing, plea agreements, and legal financial obligations. Freddie Gholston claims

that, during his *Blake* resentencing, the superior court failed to afford him a de novo

hearing and failed to find substantial and compelling reasons to justify an exceptional

upward sentence. We agree and remand for another resentencing with instructions to also

review Gholston's offender score and legal financial obligations. Nevertheless, we

caution Gholston that, because he earlier entered a plea agreement, he may not advocate

---

[†] George Fearing, a retired judge of the Washington Court of Appeals, is serving
as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

for a sentence other than the exceptional sentence entered in 2015 for his crimes of

assault, unlawful possession of a firearm, and possession with intent to deliver

methamphetamine.

FACTS

We synopsize the facts of Freddie Gholston's crime because the appeal concerns

his sentence.  On November 15, 2012, Freddie Gholston shot and injured Donald Smith

in a Moses Lake gas station parking lot.  Gholston fled the scene as a passenger in a car.

When police officers later apprehended Gholston, he admitted to shooting Smith because

Smith either owed Gholston "something" or stole "something" from him.  Clerk's Papers

(CP) at 11.  Gholston informed the officers of the presence of guns in the vehicle in

which he rode.  In a search incident to arrest, officers seized a substance in Gholston's

possession that later tested positive for methamphetamine.

On January 12, 2015, the State of Washington charged Freddie Gholston, in an

amended information, with one count of unlawful possession of a firearm in the first

degree, one count of possession with intent to manufacture or deliver methamphetamine,

and one count of assault in the third degree.  On the same day, the State and Gholston

reached a plea agreement, which provided:

> State and defendant will stipulate to [an] exceptional sentence on
> [count] 1 and [count] 3; and that each of the three non-violent felony counts
> sentences run consecutive to each other, for a total of 20 years; for example:

2

No. 38987-1-III
*State v. Gholston*

> 8 years on count 1, 8 years on count 2, 4 years on count 3; defendant will waive extradition to California on companion case 12-1-00619-1; typical LFO's [sic] for felony offense.

CP at 27 (emphasis omitted). Under the agreement, Gholston reserved the right to appeal his sentence. The guilty plea recognized that the superior court possessed the final sentencing authority and did not need to follow the agreed sentence. Gholston's offender score of six included two California convictions for possession of a controlled substance. Gholston purportedly agreed to the exceptional upward sentence to avoid lifetime imprisonment for three qualifying felonies.

On January 13, 2015, the superior court imposed the State's recommended exceptional sentence. The sentencing court remarked that Freddie Gholston's actions demonstrated that he placed little significance on either his or others' lives.

PROCEDURE

On February 25, 2021, the Washington Supreme Court released its decision in *State v. Blake*, 197 Wn.2d 170 (2021). In August 2021, Freddie Gholston filed a CrR 7.8 motion for resentencing because his criminal history reflected two earlier California convictions for possession of a controlled substance that rendered his offender score invalid under *State v. Blake*. Gholston requested resentencing to correct his offender score. The motion read in pertinent part:

3

8. Based on the information in "Appendix A," as well as the files and records herein, the undersigned attorney believes a resentencing hearing is necessary pursuant to CrR 7.8(b)(4) and (5).

. . . .

The defendant's offender score includes two out-of-state points that should not have been counted in the original score. Because prior comparable convictions pursuant to RCW 69.50.4013(1) are no longer valid, resentencing under the corrected offender score is required.

. . . .

This CrR 7.8(b) motion to resentence for the purpose of recalculating the defendant's correct offender score is an appropriate mechanism for correction of the defendant's sentence and is not time-barred. As explained herein, convictions pursuant to RCW 69.50.4013(1) are now void ab initio, and relief from punishment for a non-existent crime is justified. . . . The defendant must be resentenced given that the defendant's two out-of-state convictions are no longer comparable to any offenses in Washington.

. . . .

The defense respectfully requests that the Court resentence the defendant with a corrected offender score. The State Supreme Court case of *Blake* holds RCW 69.50.4013(1) is unconstitutional and void, and as such the consequences of convictions arising from the statute were void ab initio. Resentencing pursuant to CrR 7 .8(b) to correct the void judgment is appropriate.

CP at 56-60. The motion did not explicitly ask the superior court to calculate the offender score at 4.

In response, the State agreed that the resentencing court should lower Freddie Gholston's offender score from 6 to 4. The State maintained, however, that Gholston violated his 2015 plea agreement by arguing for a lesser sentence as part of his motion for

4

resentencing. The State added that, if Gholston argued for a lesser sentence during his

*Blake* resentencing, the court should revoke his guilty plea and set the case for trial on all

charges under the amended information.

During the resentencing hearing on June 6, 2022, the superior court recognized

that, under *State v. Blake*, Freddie Gholston possessed a right to resentencing and the

court needed to correct his offender score from 6 to 4. The resentencing court, however,

imposed the same exceptional sentence outlined in the parties' 2015 plea agreement. In

the judgment and sentence, the court found "substantial and compelling reasons that

justify an exceptional sentence . . . above the standard range." CP at 89.

The resentencing court commented during the hearing:

> THE COURT: I think that we have to look at the underlying facts here is that there . . . was an underlying plea agreement here that really, clearly did not take the standard range into—consideration. What was in consideration was taking the charges with the idea that we get to 240 months because of the plea agreement.
> Now, I can't find that there is prejudice or a manifest injustice under 7.8. However, we do have to fix the judgment and sentence.
> And so, *based on the agreement of the parties*[,] I am going to find that *the agreed 240 months*, even though we have to fix the standard range, would still—*is still needing to be imposed*.
> In addition, when we look at the idea behind this, there's no indication anywhere that really the defendant's offender score is what was taken into consideration in this plea. There's nothing about midpoint of the standard range or an additional five, it is, "We came to a plea agreement, we amended this, and now the agreement is for 240 months." And so there is no change in the maximum term.

5

And so what would be appropriate here is to get to 240 months. I think that that was the goal last time and that's what it should be even with this resentencing under Blake.

So I am going to—to get to 240, I'm going to have Count 1 be 120, Count 2 be 60 and Count 3 be 60, with those running consecutive to get to 240. With 12 months of community custody on Count 2. *Everything else in the judgment and sentence I think needs to be exactly as it was ordered at the time of sentencing.*

Report of Proceedings (RP) at 39-41 (emphasis added).

On June 7, 2022, Freddie Gholston appealed his June 6 amended sentence. This court stayed the appeal pending the Washington Supreme Court's decision in *State v. Vasquez*, 4 Wn.3d 208, 560 P.3d 853 (2024) (*Vasquez II*). *See* Letter from Tristen Worthen, Clerk of Court, *State v. Gholson*, No. 38987-1-III (Wash. Ct. App. Jan. 25, 2024). *Vasquez II* concerned issues similar to those Gholston raises on appeal. The Supreme Court filed the *Vasquez II* opinion on December 19, 2024.

On February 14, 2025, this court lifted the stay of this appeal. We then requested that the parties submit supplemental appellate briefing that addressed *State v. Vasquez*, 4 Wn.3d 208 (2024) and *State v. Harris*, 4 Wn.3d 108, 559 P.3d 499 (2024). *See* Letter from Tristen Worthen, Clerk of Court, *State v. Gholson*, No. 38987-1-III (Wash. Ct. App. Feb. 14, 2025).

## LAW AND ANALYSIS

On appeal, Freddie Gholston asserts five assignments of error. First, the

6

resentencing court failed to grant him a de novo sentencing hearing.  Second, the

resentencing court failed to exercise her independent discretion when resentencing.  The

first and second assignments of error overlap.  Third, the resentencing court failed to

eliminate a 1993 robbery conviction that washes out from his offender score.  Fourth, the

resentencing court imposed an exceptional upward sentence without finding a substantial

and compelling justification.  Fifth, the resentencing court erred in reimposing legal

financial obligations.  In addition to rejecting Gholston's assignments of error, the State

argues that Gholston violates the 1995 plea agreement by bringing this appeal and

forwarding his discrete assignments.  We address Gholston's assignments of error in the

order in which we list them above, and we complete our discussion by resolving whether

Gholston violates the plea agreement.

De Novo Review

Freddie Gholston faults the superior court for failing to conduct de novo

resentencing.  The State responds that the law did not afford Gholston de novo

resentencing but, assuming it did, the court afforded a de novo hearing.  The State

emphasizes that Gholston brought a CrR 7.8 motion to correct his offender score after the

*Blake* decision.  The State argues that an offender does not receive a de novo

resentencing on a collateral attack, such as presented by a CrR 7.8 motion.

When objecting to de novo resentencing, the State criticizes this court's published opinion in *State v. Dunbar*, 27 Wn. App. 2d 238, 532 P.3d 652 (2023) and unpublished opinion in *State v. Vasquez*, No. 38471-3-III (Wash. Ct. App. May 2, 2023) (unpublished) (*Vasquez I*), https://www.courts.wa.gov/opinions/pdf/384713_unp.pdf, *aff'd* 4 Wn.3d 208, 560 P.3d 853 (2024). The State maintains that this court inadequately explained its decisions and violated numerous Washington State Supreme Court precedents by ordering de novo resentencing, in *State v. Dunbar* and *State v. Vasquez*, for offender score corrections. The State, however, agreed, perhaps inconsistently, before the resentencing court that the court should reduce Gholston's score from 6 to 4.

In challenging the rulings in *State v. Dunbar*, 27 Wn. App. 2d 238 (2023) and *State v. Vasquez*, No. 38471-3-III (Wash. Ct. App. May 2, 2023) (unpublished), *aff'd* 4 Wn.3d 208 (2024), the State relies on *In re Personal Restraint of Adams*, 178 Wn.2d 417, 309 P.3d 451 (2013) and *In re Personal Restraint of Snively*, 180 Wn.2d 28, 320 P.3d 1107 (2014). The State contends both decisions stand for the proposition that, when a court faces an untimely collateral attack on a facially invalid judgment and sentence, it may only perform the minimal task of correcting the facial invalidity. In turn, the court may not reopen the judgment and sentence with time-barred issues. This limited work of the resentencing court would restrict the court to lowering Freddie Gholston's offender score from 6 to 4.

In *State v. Blake*, 197 Wn.2d 170 (2021), the Washington Supreme Court declared the former RCW 69.50.4013(1) unconstitutional, which allowed the State to secure a conviction for possession of a controlled substance without proving any mens rea. The court determined that criminalizing the unintentional, unknowing possession of a controlled substance violated the state and federal due process clauses. The court's ruling voided all offenders' earlier convictions for possession of a controlled substance. In turn, sentences for other crimes, resulting in part on an offender score that included a point based on a possession conviction, needed readjustment of the score.

This appeal began as Freddie Gholston's CrR 7.8 motion for resentencing based on the *Blake decision*. Gholston suffered two earlier California convictions for possession of a controlled substance.

*State v. Dunbar*, 27 Wn. App. 2d 238 (2023) also entailed a *Blake* resentencing. This court ruled such resentencing to be de novo unless the offender sought limited resentencing or an appellate mandate limited resentencing. We reasoned that, once the trial court grants the CrR 7.8 motion and orders resentencing, the original sentence no longer acts as a final judgment. Therefore, collateral estoppel does not apply. In the interest of truth and fair sentencing, a court on a sentence remand should be able to take new information into account on behalf of either the government or the offender.

After the parties filed their initial briefs in this appeal, the Washington Supreme

Court decided *State v. Vasquez*, 4 Wn.3d 208 (2024).  This court initially reviewed

*Vasquez I*, also a *Blake* resentencing filed pursuant to CrR 7.8.  Consistent with *State v.

Dunbar*, this court ruled that Anthony Vasquez was entitled to de novo resentencing.  The

Supreme Court affirmed our decision.

In *State v. Vasquez*, 4 Wn.3d 208, the Supreme Court rejected the numerous

contentions of the State.  First, according to the State, Anthony Vasquez was only entitled

to a correction of his offender score, not de novo resentencing, during a *Blake*

resentencing.  Second, the resentencing court possessed discretion to limit the arguments

the parties could make at resentencing.  Third, the resentencing judge may simply readopt

the original sentence imposed without exercising discretion.  Fourth, the resentencing

court could only grant a proportionate adjustment of the sentence based on the lowering

of the offender score.  The *Vasquez II* court concluded, consistent with our *Dunbar*

published opinion:

> We hold that at a resentencing hearing, the court has the same
> discretion as an original sentencing judge. The parties have the same
> opportunity to present mitigating and aggravating factors at the
> resentencing as they have at an original sentencing.  Under the [Sentencing
> Reform Act], a judge is free to consider any and all issues related to
> sentencing and to decide which factors to consider and apply in reaching a
> final decision.  The important components of the process are that parties be
> allowed to present their arguments and that the judge exercises their

10

independent discretion in sentencing.

*State v. Vasquez*, 4 Wn.3d 208, 219 (2024).

Freddie Gholston's motion for resentencing did not limit the scope of the proceeding to eliminating the two convictions invalidated by *Blake*. Instead, the motion asked for resentencing with a corrected offender score. No court order limited the scope of the resentencing. Thus, Gholston deserved de novo resentencing.

We agree with Freddie Gholston that the record shows that, in addition to being denied de novo review, the resentencing court failed to exercise her own discretion. The court commented that the 2015 judgment and sentence must remain the same other than reducing the offender score. To repeat, at a resentencing hearing, the court has the same discretion as an original sentencing judge. *State v. Vasquez*, 4 Wn.3d 208, 219 (2024). The judge must exercise her independent discretion when resentencing. *State v. Vasquez*, 4 Wn.3d 208, 219 (2024). "The resentencing judge may not rely on a previous court's sentence determination and fail to conduct its own independent review." *State v. Dunbar*, 27 Wn. App. 2d 238, 249 (2023). "Otherwise, the offender is deprived of de novo resentencing." *State v. Dunbar*, 27 Wn. App. 2d 238, 249 (2023).

Offender Score

Before the superior court, Freddie Gholston requested to lower his offender score from 6 to 4 by excluding his earlier California convictions for possession of a controlled

substance. The State conceded Gholston's position. As part of the resentencing hearing, the resentencing court granted this one wish and lowered Gholston's offender score to 4.

Now on appeal and for the first time, Freddie Gholston contends the resentencing court should have lowered his offender score by an additional point to 3. Gholston asks that one point for a 1993 attempted robbery conviction be removed under RCW 9.9A.525(2)(c), Washington's "wash out" deduction.

We do not address whether RCW 9.9A.525(2)(c) applies in this instance. Instead, on remand, the resentencing court can address the question. We instead respond to the State's response to Gholston's argument that his offender score should be lowered further. The State argues that Gholston waived this contention when he agreed to an offender score of 4 on filing his CrR 7.8 motion and when he did not object to the resentencing court lowering the score to 4 at the resentencing hearing.

Contrary to the State's arguments, Freddie Gholston, in his motion for resentencing and during the resentencing hearing, never identified his offender score as being 4. In the motion, he only asked for a reduction in his offender score by two pursuant to *Blake*. The State, however, correctly claims that Gholston never objected to the resentencing court calculating his new offender score as 4. Still, failing to object does not equate to waiver.

For the offender to waive the State's burden to prove his criminal history, the offender must affirmatively acknowledge his criminal history. *State v. Cate*, 194 Wn.2d 909, 913, 453 P.3d 990 (2019). A failure to object does not suffice. *State v. Cate*, 194 Wn.2d 909, 913 (2019). Going even further, assuming Gholston had agreed to an offender score of 4 before the resentencing court, he probably would not be bound on appeal as shown below.

During the June 2022 resentencing hearing, Freddie Gholston did not argue that his 1993 California conviction for attempted robbery washed out of his criminal history and offender score under RCW 9.9A.525(2) after the removal of the two California drug convictions invalidated by *Blake*. Nevertheless, the State does not contend that Gholston cannot raise the issue for the first time on appeal.

"A sentencing court acts without statutory authority under the sentencing reform act when it imposes a sentence based upon a miscalculated offender score." *In re Personal Restraint of Call*, 144 Wn.2d 315, 332, 28 P.3d 709 (2001); *In re Personal Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997). The court lacks authority even if it sentences the offender within the statutory range based on the corrected offender score. *In re Personal Restraint of Call*, 144 Wn.2d 315, 333 (2001). The judgment and sentence lacks validity with a miscalculated offender score even when the defendant pled guilty and agreed to the prosecutor's recommended sentence. *In re*

*Personal Restraint of Fletcher*, 3 Wn.3d 356, 370, 552 P.3d 302 (2024). In short, imposition of a sentence based on an upwardly miscalculated offender score renders a judgment and sentence invalid on its face. *In re Personal Restraint of Fletcher*, 3 Wn.3d 356, 370 (2024). Until a trial court exercises its independent discretion in imposing a new judgment and sentence, there is no sentence. *State v. Ellis*, __ Wn. App. __, 579 P.3d 37 (Wash. 2025); *State v. McWhorter*, 2 Wn.3d 324, 327-28, 535 P.3d 880 (2023); *State v. Waller*, 197 Wn.2d 218, 228, 481 P.3d 515 (2021). When an error in a defendant's offender score affects the applicable sentencing range, resentencing is required. *State v. Ellis*, __ Wn. App. __, 579 P.3d 37 (Wash. 2025).

The State also maintains that Freddie Gholston violates his 2015 plea agreement by asserting his offender score is other than 4. We address this argument toward the end of our opinion.

Exceptional Sentence

Freddie Gholston argues that the resentencing court erred in imposing the same exceptional sentence as the 2015 sentence in part because the 2022 court failed to consider whether substantial and compelling reasons justified imposing an exceptional sentence. The State, in response, highlights language in the 2022 judgment and sentence, that declares the court finds substantial and compelling reasons that justified imposing an exceptional sentence. Gholston impliedly replies that the court merely checked the box

in the standard form judgment and sentence when finding substantial and compelling

reasons. According to Gholston, the resentencing court gave no independent thought or

exercised individual discretion when checking the box.

The court's June 6, 2022, oral ruling confirms that the resentencing court deemed

it needed to impose the sentence outlined in the plea agreement. Other than modifying

the offender score, the court commented, "Everything else in the judgment and sentence I

think needs to be exactly as it was ordered at the time of [the 2015] sentencing." RP at

40-41.

A trial court may impose an exceptional sentence outside the standard range only

"if it finds . . . substantial and compelling reasons justifying an exceptional sentence."

RCW 9.94A.535; RCW 9.94A.537(6). In turn, whenever "a sentence outside the

standard sentence range is imposed, the court *shall* set forth the reasons for its decision in

*written* findings of fact and conclusions of law." RCW 9.94A.535 (emphasis added);

*State v. Friedlund*, 182 Wn.2d 388, 390-91, 341 P.3d 280 (2015).

We agree with Freddie Gholston that the sentencing court should enter findings

more detailed than template language of "substantial and compelling reasons justifying

an exceptional sentence." RCW 9.94A.535. Findings, under RCW 9.94A.535, "enable

the appellate courts to review the sentence imposed by the lower court." *State v.

Fletcher*, 20 Wn. App. 2d 476, 484-85, 500 P.3d 222 (2021). We cannot adequately

determine if the sentencing court correctly concluded that substantial and compelling reasons justified an exceptional sentence without some explanation as to those reasons. On remand, the resentencing court should list those justifying reasons.

This court has ruled that, when the jury finds an aggravating factor justifying an exceptional sentence upward, the sentencing court should make no further factual finding other than a finding of substantial and compelling reasons justifying an exceptional sentence. *State v. Perry*, 6 Wn. App. 2d 544, 558, 431 P.3d 543 (2018); *State v. Sage*, 1 Wn. App. 2d 685, 709, 407 P.3d 359 (2017). But this appeal does not concern any jury finding.

Plea Agreement

The parties present competing arguments attended to the plea agreement reached in 2015. Freddie Gholston contends the resentencing court erred when concluding she must enforce the agreement. We agree. The State maintains that Gholston is violating the plea agreement by asking for relief beyond an amendment to his offender score. The State insists that Gholston breaches the agreement by appealing the resentencing court's ruling. We disagree. We remind, if not warn, Gholston, however, of steps he cannot take on remand.

RCW 9.94A.431(2) proclaims:

> The sentencing judge is not bound by any recommendations
> contained in an allowed plea agreement. . .

A plea agreement binds the State, but not the sentencing court. A defendant lacks any right to be sentenced according to the sentence recommended in his plea agreement. *State v. Henderson*, 99 Wn. App. 369, 374, 993 P.2d 928 (2000); RCW 9.94A.431(1).

The resentencing court commented during the 2022 hearing that "based on the agreement of the parties[,] I am going to find that the agreed 240 months, even though we have to fix the standard range, would still—is still needing to be imposed." RP at 40. This passage shows the court deemed herself bound by the plea agreement. On remand, the court should recognize her discretion to sentence contrary to the agreement.

The Washington Supreme Court, in *State v. Harris*, 4 Wn.3d 108 (2024), recently discussed what comments the defendant may utter during sentencing after the entry of a plea agreement. During oral argument before this court, Freddie Gholston's counsel affirmed that Gholston would follow the *Harris* principles on remand.

Plea bargaining is an essential and desirable component of the criminal justice system. *Santobello v. New York*, 404 U.S. 257, 260-61, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3401, at 2 (3d ed. 2004). The negotiation of pleas leads to final disposition in the majority of criminal cases. *Missouri v. Frye*, 566 U.S. 134, 143, 132 S. Ct. 1399,

182 L. Ed. 2d 379 (2012).  This process avoids subjecting defendants to excessive time in confinement pretrial, provides a measure of certainty as to possible punishments, and begins the rehabilitative process quicker for those pleading guilty and who are imprisoned.  *State v. Harris*, 4 Wn.3d 108, 119 (2024).

A plea agreement is a contract.  *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997).  Due process requires the prosecutor to act in good faith and prohibits undercutting the terms or conduct evidencing an intent to circumvent the terms of a plea agreement.  *State v. Harris*, 4 Wn.3d 108, 117 (2024).  Defendants owe the same duty of good faith.  *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 307, 979 P.2d 417 (1999).

A party breaches the plea agreement when offering unsolicited information through a report, testimony, or argument that undercuts the party's obligation under the agreement.  *State v. Harris*, 4 Wn.3d 108, 117 (2024).  Any attempt by the defendant to explicitly or implicitly seek a sentence less than the agreed sentence breaches the agreement.  *State v. Harris*, 27 Wn. App. 2d 522, 532, 533 P.3d 135, *aff'd in part, rev'd in part*, 4 Wn.3d 108, 559 P.3d 499 (2024).  But a party may answer the court's questions.  *State v. Harris*, 4 Wn.3d 108, 117 (2024).  The party may also advise the

court of the applicable law. *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007).

The State suggests that Freddie Gholston, by asking for de novo resentencing, seeks to present argument or evidence to the resentencing court to persuade the court to lower the previously imposed sentence. We disagree. Gholston holds the right to de novo resentencing and remains free to inform the court of the law concerning his rights. Under the 2015 plea agreement, Gholston reserved the prerogative to appeal any sentence.

In his brief, Freddie Gholston impliedly argues that the resentencing court should lower his sentence because of a change in the law since 2015 concerning second degree robbery and the Persistent Offender Act. According to the State, Gholston breaches the plea agreement by advancing an argument to lower the sentence. We agree. We recognize a thin line between the two concepts—Gholston may inform the resentencing court of a change in the law, but he may not explicitly or implicitly advocate for a lower sentence because of this change. During oral argument, Gholston's appellate counsel conceded Gholston may not ask, on remand, for a sentence other than that implanted in the 2015 agreement.

According to the State, Freddie Gholston also violates the plea agreement by asking for a lower offender score. We disagree, as long as he does not advocate for a

19

different sentence. The plea agreement did not include any stipulation of an offender score.

Legal Financial Obligations

The resentencing court imposed on Freddie Gholston a $500 victim penalty assessment, $200 in court costs, $750 in court appointed attorney fees, and a $100 DNA collection fee, for a total of $1,550 in discretionary legal financial obligations. At the time of Gholston's initial sentencing in January 2015, the trial court could impose these financial obligations on a defendant after finding the defendant possessed the ability or likely future ability to pay the discretionary legal financial obligations. RCW 10.01.160(3); *State v. Blazina*, 182 Wn.2d 827, 831, 344 P.3d 680 (2015). Before March 2015, superior courts routinely assessed these legal financial obligations without any inquiry into the defendant's present or likely future ability to pay. Defendants also rarely objected to the imposition of the obligations.

Two months after Freddie Gholston's original sentencing, the Washington Supreme Court issued *State v. Blazina*, 182 Wn.2d 827 (2015). *Blazina* demanded that the sentencing superior court engage in an individual inquiry of the defendant's ability to pay financial obligations before imposing discretionary legal financial obligations. The ruling implicitly, if not explicitly, announced that sentencing courts should have always

performed this individual inquiry. Since 2015, legislation has further benefited defendants.

Under RCW 36.18.020, effective on January 1, 2023, a sentencing court may not impose the court filing fee if the court finds, at the time of sentencing, the defendant indigent. LAWS OF 2023 chapter 1169, sections 1 and 4, effective July 1, 2023, precludes courts from imposing victim penalty assessments on defendants found to be indigent at the time of sentencing. The court-appointed counsel fee is a discretionary cost of prosecution imposed under RCW 10.01.160. *State v. Smith*, 9 Wn. App. 2d 122, 127, 442 P.3d 265 (2019). The 2018 LFO amendments prohibit a court from imposing the fees on an indigent offender, as defined in RCW 10.101.010(3)(a)-(c). RCW 10.01.160(3); *State v. Smith*, 9 Wn. App. 2d 122, 127 (2019). Under *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), courts apply these new financial obligation laws to cases on direct review or not yet final. The new laws also apply at resentencing. *State v. Ellis*, 27 Wn. App. 2d 1, 16–17, 530 P.3d 1048 (2023), *aff'd in part, rev'd in part*, __ Wn. App. __ 579 P.3d 37 (Wash. 2025).

Freddie Gholston requests that we strike the legal financial obligations imposed on him by the resentencing court because the pertinent statutes no longer authorize their imposition on indigent defendants. The State agrees in principle to the retroactive effect of the recent legal financial obligation enactments but argues against applying the statutes

21

in favor of Gholston because his judgment and sentence became final in 2015. The State characterizes this proceeding as an untimely collateral attack, not a direct appeal. We disagree. *State v. Vasquez*, 4 Wn.3d 208, 219 (2024) and *State v. Dunbar*, 27 Wn. App. 2d 238 (2023) treat this court's review of a *Blake* resentencing as a direct appeal. A resentencing means that the 2015 judgment was not final.

The resentencing court never found Freddie Gholston indigent at the time of the resentencing. The court never made an inquiry into Gholston's financial situation. On remand, the resentencing court should do so.

Freddie Gholston faces another obstacle to the removal of the legal financial obligations. The 2015 plea agreement curtly reads that the court should award "typical LFO's [sic] for felony offense." CP at 27 (emphasis omitted). Gholston continues to be bound by this agreement. Neither party addresses whether the language in this agreement extends to "typical" legal financial obligations imposed regardless of the defendant's financial situation. Neither party discusses whether the language extends to "typical" obligations as of 2015 or as of resentencing. *State v. Harris*, 4 Wn.3d 108 (2024) teaches that a defendant does not necessarily benefit from a change in the law if that change impacts a plea agreement. The superior court should, on remand, also determine if the language of "typical LFOs" relates to typical LFOs in 2015 or the time of resentencing.

22

No. 38987-1-III
*State v. Gholston*

CONCLUSIONS

We remand to the superior court to conduct another resentencing. The court should perform resentencing de novo while exercising her own discretion. During the resentencing process, the court should determine whether Freddie Gholston's offender score remains correct. The resentencing court should also recognize that it retains the discretion to sentence contrary to the parties' 2015 plea agreement. If the court imposes an exceptional upward sentence, the court should enter a finding that a substantial and compelling justification exists to justify the sentence together with findings as to the underlying reasons for this justification. The court should assess whether the plea agreement allows the striking of legal financial obligations, and, if so, whether Gholston is indigent.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.P.T.

WE CONCUR:

_____                    _____
Cooney, J.                                          Murphy, J.

23